JAMES L. HOUSTON and RHOADS HAZZARD,

*vs.*

WILLIAM J. HURLEY and LEVIN J. MEARS, administrators of STEPHEN HURLEY, deceased.

*Sussex, Sept. T.* 1860.

A purchaser, under a contract for the sale of land, who has accepted a deed and entered into possession will, nevertheless, be relieved in equity against a defect of title afterward discovered by him, *if fraud in the sale was practiced upon him by the vendor.* Otherwise, *it seems,* if the deed were accepted *in the absence of fraud.*

The right to rescind a contract for fraud must be exercised promptly after the discovery of it.

A purchaser under a contract for the sale of land accepted a deed and entered into possession in December, 1854, soon after which he discovered that the land had been sold, before the conveyance to him, for unpaid taxes; but he continued in possession until 1858, when, without eviction, he abandoned it. *Held*, that after so long delay he was not entitled to wholly rescind the contract; but *held also*, that a portion of the purchase money remaining unpaid, a court of equity will restrain the collection of it until a good title be made.

A surety in a debt for which judgment is recovered against the principal is not discharged by a stay of execution, if such stay is required by statute, although it is entered as given by consent of the plaintiff.

Nor is such surety discharged by a mere stay of execution after a levy.

But if goods levied upon under the execution have been released by the creditor, without the surety's consent, the surety is discharged *pro tanto*.

BILL IN EQUITY, filed under the following circumstances :—

Stephen Hurley, the defendant's intestate, sometime prior to Nov. 13th, 1854, by a contract in writing, agreed to sell and convey to James L. Houston, one of the complainants, by " a good and sufficient title," a tract of land situate in the State of Maryland, known as the " Moreign tract," described as containing 511 acres, more or less, for the sum of $2000, to be paid as follows : $50 in cash at the date of the contract, and the residue in notes of $500 each, with surety, payable six months apart. The contract was executed by a deed dated Nov. 13th, 1854, upon receiving which Houston paid Hurley $250 more in cash, gave three notes, each for $500, and one for $200, with Rhoads Hazzard as surety, and entered into possession. The land in question had been purchased by Hurley on the 8th of August, 1853, at a sale by order of the Court of Chancery in Maryland, and a deed for the same was executed to him by a trustee of the Court, Sept. 30th, 1854. In December, 1853, the land was sold to Thomas H.

Webb by a collector of taxes for back taxes due in the years, 1849, 1850, and 1851. No deed had been executed by the collector. Houston, after having taken possession and made some improvements, abandoned the property in 1857, when Webb, the purchaser at the collector's sale, entered. After the notes given by Houston matured suits were brought on them in Maryland, and judgments were recovered against Houston (Hazzard, the surety being *non est*) with a stay of execution for four months, under the law of Maryland. Execution was afterward issued and levied on goods; but, by Hurley's consent, the goods were released from the levy and taken away by Houston, and the execution was stayed. Afterward, and without further exhausting his remedy on the judgment in Maryland, Hurley brought suits in Delaware, to recover the four notes from Houston and Hazzard.

The bill was filed to enjoin the suits in Delaware. It alleged that at the time of the conveyance by Hurley to Houston the title to the land was defective by reason of the collector's sale; that Hurley knew of the defect and fraudulently concealed it; that no covenants of title were made in Hurley's deed, the complainant being induced to waive them by the representation of Hurley's counsel that the title was good and that covenants of title were not necessary in a deed made by a trustee of the Court. The bill further alleged that, although the contract and the deed called for 511 acres, there were in fact only 280 or 300 acres in the tract conveyed; also, that Houston accepted the deed without knowledge of the defect of title or of the deficiency in the quantity of land. The bill further insisted that Hurley, having obtained a judgment on the notes in Maryland, could not afterward sue on them in Delaware; also, that the stay of execution and release of the levy on goods had discharged Hazzard, the surety. *Prayer*, for an injunction against the actions upon

32

the notes—absolutely as to Hazzard, and as to Houston, until the title should be perfected, and until the defendants had exhausted their remedy on the judgment in Maryland.

The answer denied the charge of fraud, alleging that Hurley sold and conveyed the land to Houston in good faith and without knowledge of any incumbrances; that Houston, in 1854, accepted the deed in performance of the contract, held the land in possession until 1857, cut timber to the value of $2000, received rent to the amount of $300; that he was not evicted, but abandoned the possession by connivance with Webb, as a pretext to avoid paying the notes; that the land was not sold for taxes *before* Houston took possession; that if sold, it was by Houston's neglect in not paying up the taxes; that he bought the land knowing that Hurley had just purchased it at the *trustee's sale*, and that he was buying only what Hurley took at the sale. The answer further insisted that the surety had not been discharged by the proceedings in Maryland.

Depositions were taken on both sides. The evidence, so far as it was material, is stated in the opinion of the Chancellor.

The cause came before the Chancellor, at the March T. 1863, for a hearing upon the bill, answer, exhibits and depositions.

*McFee* and *Layton*, for the complainants.

The equity of the bill rests on several grounds, viz:

1. *The fraud of Hurley.* According to the evidence he contracted to sell the land to Houston in the fall of 1854, stipulating expressly for " a good and sufficient title." A year previous, in December, 1853, the same land

had been sold to Webb for taxes. Hurley had no title when he undertook to sell to Houston. The constable's receipt at the sale for taxes, though without a deed, carried an equitable title. At the least, Hurley's title was fatally encumbered: it was not such as he agreed to convey. Nor can it be doubted that Hurley, when he contracted with Houston, had knowledge of his defect of title. Such knowledge of facts affecting his own title, occurring a year previous, is fairly to be presumed. But Webb's testimony proves, additionally, that Hurley knew of the sale. The deed itself shews fraud on its face, in the absence of the usual covenants for title. It is, then, a case of *actual fraud.* Further, even supposing Hurley sold in ignorance of the defects of title, and was innocent of fraud, there is none the less a failure of consideration for the purchase money. In either view, Houston upon discovering the defect, though after having accepted a deed, was entitled to rescind the contract and to abandon the land without waiting to be evicted. 2 *Parsons on Cont.* 278–9; 1 *Sugd. on Vend.* 324–5. 1 *Sto. Eq. Jur.* 141.

2. *As against Houston* the notes for the purchase money were merged in the judgment recovered against him in Maryland prior to the suit in Delaware; and as to him they could not be again sued on. 1 *Chitty's Pl.* 105. 1 *Bull. N. P.* 182, *n. a.* At all events, Hurley's administrators were bound to exhaust their remedy in Maryland before suing for the same debt here.

3. *As to Hazzard, the surety in the notes*—he was discharged by Hurley's giving time to Houston under the judgment; also by his releasing the levy he had acquired upon Houston's goods. On recovery of the judgment a stay of execution until the next term was entered by consent, which was giving time to the principal. Again, after execution and a levy on Houston's goods, the levy was released by order of Hurley, and the goods were de-

livered to Houston. All this was to the prejudice of the surety, and upon settled principles discharged him. 1 *Madd. Ch. Pr.* 190; *Burge on Suretyship* 206; *Nisbet vs. Smith,* 2 *Bro. Ch. Rep.* 579; *McDowell vs. Bank of Wilmington and Brandywine,* 1 *Harring. R.* 383; *Tindal vs. Brown,* 1 *T. R.* 167; *Theob. on P. & S.* 127, (1 *Law Lib.* 75.)

*Moore* and *C. M. Cullen,* for the defendants.

1. The case shews no fraud nor failure of consideration for the notes. Hurley's deed to Houston conveyed " a good and sufficient title." The sale for taxes, being without any deed from the collector, passed no title. It is true, Webb, the purchaser, testified that his title was confirmed by an act of Assembly. But there was no proof of such act; and, had there been such proof, no legislative confirmation, without the collector's deed, could divest Hurley's title. His title, at the date of the deed to Houston, was therefore good until it should be impeached, which might never be; and although Houston, while the matter stood in contract, might have refused to take the title in this condition; yet, having accepted a deed and entered into possession, he could not afterward abandon the land without an eviction. 1 *Sugd. on Vend.* 324, *sec.* 28. 2 *Ib.* 126, *sec.* 7; 130 *sec.* 9; *Abbott vs. Allen* 2 *Johns. Ch. R.* 519; *Johnson vs. Gere, Ib.* 547; *Griswold vs. N. Y. Ins. Co.,* 1 *Johns. R.* 213; 2 *Kent. Com.* 471, 473. It is the settled rule that a party intending to repudiate a contract must do so at the earliest occasion. 1 *Sugd. on Vend.* 324, *n.* 2; 2 *Ib.* 10, *sec.* 29; 130, *see.* 11. Here, Houston, after he knew of the difficulty, continued in possession, paid taxes, cut timber, received some rent and submitted to a judgment for the purchase money. He has made money from the land, and cannot now be permitted to repudiate the bargain—at least, without accounting for what he has made under it.

The imputation of fraud on the part of Hurley is not sustained by the proof. The weight of evidence is that he contracted to sell to Houston in the fall of 1853, which was before the sale for taxes in December following. He could then have had no knowledge of such sale; nor is he proved to have known of the back taxes. He had himself purchased ·only in the August previous. Houston knew that Hurley had but recently bought the land and had not yet got the deed. This was sufficient to put him on his guard. Looking then at the whole case, it is not one for relief on the ground of *fraud;* and as to the embarrassment of the title, the complainant has,by accepting it and taking and continuing in possession, precluded himself from rescinding the contract without an eviction. The proper remedy for a purchaser, upon a defect of title discovered after he has taken a deed, is by suit upon the covenants of the deed; but Houston chose to accept a deed without covenants, and he must abide the consequences.

2. The recovery of judgment in Maryland on these notes does not bar a suit here. Hazzard was not served with process there. The notes are both joint and several. 1 *Chitty's Pl.* 42 *a.* Nor was Hazzard discharged, as surety, by the proceedings in Maryland. The stay of execution, on recovery of the judgment against Houston, was compulsory, being given under the law of Maryland. As to the release of the levy, there is no sufficient evidence. It was in writing and cannot be proved by parol. But, giving the release its full effect, it was only of a part of the principal's property, and could operate only as a release *pro tanto.* *Theo. Pr. and S.* (1 *L. L.*) 85 ; *Baker vs. Briggs,* 8 *Pick. R.* 121; 14 *U. S. Dig.* 542, *sec.* 58; 5 *Ib.* 820,*sec.* 160.

HARRINGTON, CHANCELLOR.—The proof in this case establishes a written contract by the defendant's intestate,

Hurley, to sell to Houston,the complainant, the " Moreign" tract of about 511 acres of land, and to make him " a good and sufficient title" to it, for the consideration of $2000—a small part to be paid in cash, and the balance to be secured by three notes, of $500 each, with complainant, Hazzard, as surety.   The notes were made, and Houston went into possession.   The contract is without date, and the time of making it uncertain; the complainants alleging that it was in the fall of 1853, and the defendants that it was in the fall of 1854; which latter date seems the more probable. It was certainly several weeks before the 13th of November, 1854, on which day Hurley executed and Houston accepted a deed conveying the ;" Moreign" farm, of about 511 acres, but without any warranty of title against incumbrances.

It is proved that Houston had knowledge that the Hurley title was derived through a sale of the " Moreign" tract by a trustee, under an order of the Court of Chancery in Maryland, since the trustee's deed is dated on the same day with his; and the Ennals grant to Moreign, referred to therein, is the same described by the trustee's deed. This is also admitted in the bill, by the statement that a lawyer,alleged to have been Hurley's, represented that covenants of title were not necessary, as the title was derived under a trustee's sale in chancery. The trustee's deed is in evidence, but his authority (recited in it) is not otherwise proved, the chancery record having been ruled out of the case for want of authentication.   The Moreign title prior to this is in evidence, i. e. the Ennals deed.   Indeed, it is not attacked beyond the chancery sale; but the complainant alleges that the title given him was not " good and sufficient," because the land was incumbered by old, unpaid taxes, and in fact had been sold, according to law, for the non-payment of these taxes, to one Webb, who claimed a right to the farm, and who it seems entered after the

complainant, Houston, left it.   To this it is replied, that such a sale by the collector, for non-payment of taxes, would not transfer title, without deed ; and that, though it would have been good ground for the complainant to refuse the deed of Hurley as a compliance with his contract to make " a good and sufficient title," yet that Houston, by accepting the deed on the 13th of November, 1854, precluded himself from denying the sufficiency of the title as a full compliance with the previous agreement, and that he cannot, after accepting that deed, abandon the contract, nor even resort to Hurley for a defect of title, otherwise than under the covenants of the deed.  This position is tenable upon the assumption that there was no fraud practised upon Houston. It is with this qualification, viz ; the absence of fraud that Sugden lays down the rule, when he says that generally a purchaser, after a conveyance, has no remedy except upon the covenants he has obtained, although evicted for want of title, and however defective the title may be, if there is no fraudulent concealment on the part of the seller ; that the purchaser's only remedy is under the covenants.    1 *Sugd. on Vend.* 324.   It is true, that there are no covenants in this deed, and that Houston is therefore remediless, if he accepted it without being deceived; and the fact that he accepted so meagre a deed as this, without a single covenant or assurance, as the performance of an agreement to convey " a good and sufficient title," when the land was covered with incumbrances for tax, and had in fact been publicly sold for taxes, does not itself prove the fraud, though it is important in considering whether Houston was in fact defrauded by the willful concealment of these things by Hurley and the designed entrapping of him with so imperfect and unusual a deed.

This then, is the main question in the cause—whether there was fraud ; for though Houston may be deprived of legal remedy for want of proper covenants in this deed,

and though, by his receiving it and holding the land under it for some years, he may even be debarred by his laches from putting an end to the contract—yet,if the fraud is established, a court of equity will relieve ; and it will not allow proceedings at law to go on against him for the purchase money until the title is perfected.

Incumbrances must be paid off by the vendor before he can compel payment of the purchase money, if discovered before the conveyance. 2 *Sugd. on Vend.* 124. After conveyance executed, if the vendor was aware of the defect of title, and concealed it from the purchaser, it is a fraud, and the purchaser will be relieved in equity. 2 *Sugd. on Vend.* 132.

The decisive question in the case is, did Hurley know and conceal from Houston the tax incumbrances and the sale for taxes, by which the title was brought into dispute ? He could not perform his agreement to give Houston " a good and sufficient title" when the title was thus in dispute ; and, without a disclosure of the facts to Houston, his bare deed of bargain and sale, without any covenants, was a fraud on him, and does not deprive him of the right to be relieved in equity from paying the purchase money.

There is no evidence in the case that Houston knew of the delinquent taxes, or had any information of the sale by the collector to Webb and the consequent defect or dispute of title in Hurley, until after the execution of this deed. He states this in his bill positively. Before he contracted for the land he lived at a distance, and the collector's sale, if not made prior to his contract, was made many months before his deed. It is entirely probable, then, that this sale was unknown to him ; while Hurley, being in the neighborhood of the county town and being interested in the sale, which was public, was likely to know and, according to direct proof, did know of the sale. Yet, neither the fact

of this sale nor the existence of the tax incumbrances was disclosed to Houston; while the giving an unusual deed, without warrants, under the advice, as the bill alleges, of Hurley's lawyer that a chancery title did not require warrants, are abundant evidence to my mind of tacit, if not of active, fraud.

Does this fraud annul the contract of sale, or justify Houston in abandoning the property, as he did ?

The rule on this subject is that the right to rescind a contract for fraud must be exercised promptly after discovery of the fraud.

Houston states in his bill that he heard of the collector's sale subsequently to the execution of the deed, which was in 1854; and, being then in possession of the land, he was required to act promptly on this information. The time he first heard of it is not stated ; but, from his removal to the neighborhood and the publicity of the fact, he must be taken to have known it soon after the time he mentions as not having heard any thing of it. Yet, he continued in possession of the farm for several years, paid the taxes as late as 1858, and afterward abandoned the premises, without eviction or any legal attempt by Webb to turn him out of possession.

This is not the promptness required, and I think he had no right at that time so to abandon the purchase; but, I think, he is entitled in equity to refuse further payment of the purchase money until he gets the title he bargained for, namely, " a good and sufficient title" against any lawful claims of Webb, or his alienee, and also discharged of the back taxes which Hurley was bound to pay. 2 *Sugd. on Vend.* 124.

Another question arises in the case, with reference to the complainant Hazzard. He is the surety of Houston in the four notes, amounting to over $1700, on which proceed-

33

ings were had in Maryland, judgment obtained against Houston, with a stay of execution for four months by consent, as the record expresses it, execution afterward taken out and levied, the levy released and execution stayed by agreement, and the goods levied on taken away by Houston, with Hurley's consent.   This is relied on as releasing the surety.

But it is objected, in the first place, that the release being under Hurley's hand, is not sufficiently proved by the sheriff's deposition.   This objection mistakes the point on which the question rests, which is, not whether the release to the sheriff from the responsibility of executing his writ can be proved, as a release, without its production, but it is whether the fact of lifting the levy, releasing the goods and staying the execution discharges the surety.

It has long been settled that giving time to a principal, by agreement, discharges a surety ; 1 *Harring. Rep.* 369; and that even the accepting of a judgment, with a limited stay of execution, without the surety's consent, releases him; and the reason is that such an arrangement puts it out of the creditor's power to proceed at any time, or to authorize the surety to proceed, and thus puts him in a worse condition.

But it appears here that the judgment in Maryland against Houston was taken with a stay under an act of assembly, and that the plaintiff's consent to the stay was by the act necessary to his obtaining the judgment.   It also appears that the stay of execution, after the levy, was merely a suspension of active proceedings, and did not prevent the plaintiff from proceeding again at any time. A surety is not discharged by mere indulgence or delay in suing or executing the principal.  1 *Russ. R.* 381.

Lifting the levy and releasing the goods levied on is another thing, and is an injury to the surety to the amount

of the property released.   If the benefit of some securities for a debt is lost by the neglect of the creditor, the surety is *pro tanto* discharged.   2 *Sim. & Stu. R.* 457.

The goods levied on in this case were a certain security for the payment of this judgment, in which Hazzard was interested, and the release of them, without his consent, was an injury to him, to the amount of their value.

A creditor is even bound to keep other property, pledged for a debt for which he has security, for the benefit of the surety; and, if he parts with it, he releases the surety to the amount of the property given up.   8 *Pick. Rep.* 121.

I am, therefore, of opinion that the release of this levy on Houston's goods was an injury to his surety; and, being without his consent, it is a release of his obligation of suretyship to the extent of the value of the goods given up.   This can be ascertained with reasonable accuracy in any proceeding hereafter taken to charge the surety, since the levy and inventory will be shown by the sheriff's return.   But I do not know of any decided case, and cannot perceive any principle of equity, that will make such a stay of proceedings and release of goods levied on an absolute release of the surety.   It does him no wrong beyond the value of the goods released.   The creditor has the right to forbear execution; and the surety has a remedy, if he desires it, to obtain further execution.

The decree will, therefore, be to continue the injunction of proceedings at law against Houston and Hazzard, on the notes given for the consideration of the " Moreign" farm until a good and sufficient title shall have been made to Houston, according to the agreement; and that beyond this the defendants shall be prohibited and enjoined from ever proceeding against Hazzard, the surety in these notes, to the amount of the value of the goods of Houston levied on under the judgment and execution in Maryland and surrendered by the plaintiff in that execution; and that the defendants pay the cost of this suit.