FRANCES RUDOLPH KITTINGER,

*vs.*

DAVID ROSSMAN.

*New Castle, Jan.* 26, 1921.

. Though a contract of sale of land did not definitely declare time to be of the essence thereof, yet it declaring "final settlement to be completed on or before" a certain day, providing that in case title is found to be imperfect forfeit money will be refunded and contract canceled, and the parties having by writing extended for a month time for performance, it is clearly inferable that they deemed it vitally important that the contract be performed at the stipulated times, which makes time of the essence of the contract.

Though time be not of the essence of a contract of sale, the vendor, who at time of contract has not a marketable title, must use the utmost diligence to perfect his title before it is time for him to convey, and he not having perfected it in such time the test of his right thereafter to specific performance is whether he did all that he ought to have done and took all the pains he could to be ready to perform.

Under the facts *held* the vendor was lacking in the requisite diligence to perfect title by getting a deed from the city of a foot of land along the street front, and in having a building restriction removed, and so was not entitled to specific performance.

Charter of Wilmington, § 116, denying recovery of certain damages for "extending" any street, does not apply to "widening" the rest of the section referring to damages for taking land to "extend, widen, lay out and open" street.

Equity will not require a purchaser to take a deed, where there is reasonable doubt of the legal sufficiency of the title.

A statute, denying compensation for any building thereafter placed on land within the lines of a street if extended in case the street be later extended, if valid, would be an incumbrance, preventing specific performance against the purchaser of the land.

A statute, declaring that one thereafter building on land within the lines of a street if extended shall not be entitled to damages for the improvement if the street is later extended, is invalid, as depriving the owner of use without compensation.

BILL FOR SPECIFIC PERFORMANCE. The bill is filed by the complainant as the seller of land to the defendant under a written contract. The case was heard upon the pleadings, exhibits and

testimony heard orally before the Chancellor. A sufficient state-
ment of facts is contained in the opinion of the Chancellor. See
also, *ante p.* 228, 110 *Atl.* 677.

*Leonard E. Wales* and *Edward W. Cooch*, for complainant.
*William S. Prickett* and *William Prickett*, for defendant.

THE CHANCELLOR. The bill is brought by a seller of land
against the buyer to compel him to accept a deed and comply
with the terms of the sale by paying part of the purchase price
and making a mortgage for the balance thereof.

By an agreement in writing dated April, 15, 1920, the com-
plainant sold to the defendant the property in the city of Wilming-
ton known as Nos. 411 and 413 Delaware Avenue, with a frontage
on Delaware Avenue of about fifty-three feet, two and three-
quarters inches, and a frontage on West Eleventh Street of about
fifty-seven feet for sixty-eight thousand dollars. The sum of one
thousand dollars was paid as part of the purchase money when
the agreement was signed, one thousand dollars more was due
May 15, 1920, thirty-three thousand dollars more on the delivery
of the deed, and the purchaser to give a mortgage for thirty-
three thousand dollars for the balance of the purchase money
payable in one year. "Final settlement to be completed on or
before June 20, 1920." The attorney for the purchaser on ex-
amining the title found certain objections thereto, and at a con-
ference with the complainant and her counsel they were pointed
out to her. The purchaser paid the sum of one thousand dollars
payable on May 15, 1920, and on the same date the agreement
was modified in writing so that the purchase money mortgage
be made payable in five years instead of one year. A deed was
tendered on May 17 and refused. In a letter dated May 17 from
the purchaser's counsel to the complainant three reasons were
assigned why the title was considered defective, one being the
burdensome building restriction imposed on the land by a prior,
owner of it, and on adjoining land, and the other two being as
to matters which were decided later by the Chancellor not to
constitute defects. *Ante p.* 228, 110 *Atl.* 677.

As a result of a conference on May 6, a bill prepared by Ross-
man's solicitor was filed on June 7 by the seller against the buyer
for specific performance, simply setting out the contract, the tender

on May 17 of the deed and the refusal, and alleging that the complainant was ready to perform and defendant had refused. By an answer filed the same day the defendant set up the three defects mentioned in the letter of May 17 above referred to. By a further answer filed June 16 the defendant alleged that the complainant did not own a strip of land one foot, five and one-half inches wide and running along the whole of the lot fronting on Delaware Avenue, and that the title to the strip was in the city of Wilmington. The case was heard by the Chancellor on June 23 upon the pleadings and some testimony taken before him at the hearing. On July 12 the opinion of the Chancellor was filed sustaining two objections to the title and holding two others insufficient. *Kittinger v. Rossman, ante p.* 226, 110 *Atl.* 677.

The Chancellor found that a valid building line restriction bound the property in question, and had in fact been violated by the erection of the building now on the premises, and declined to compel the purchaser to take the property with the burden of that restriction. He also found that the complainant did not own the strip of land mentioned above. Afterwards the bill was dismissed.

By an agreement in writing between the parties, dated June 18, the time for performance had been extended to July 20 from June 20. After the decision of the Chancellor the complainant secured certain deeds to discharge the encumbrance of the building restriction, viz. a deed from John E. Torbert, dated July 22, and two from owners of other land abutting on Delaware Avenue for whose benefit the restriction had been imposed, one deed or release being dated July 27, but acknowledged by one of the parties thereto as late as September 25, and the other deed being dated November 29. A deed dated August 3, 1920, was made by the city of Wilmington conveying to the complainant the strip of land above referred to.

On August 4 the complainant filed a second bill setting forth the former litigation and that promptly thereafter, with the approval of the defendant, the complainant undertook to remedy the defects, but was unable to do so until immediately before filing the bill; that though she was led by the defendant to believe that he would accept the title as soon as the defects were cured,

he refused on July 20 to accept a deed after that date, or to extend the time for performance and demanded a return of the money paid by him as part of the purchase money; that the complainant had been diligent; and that on August 4 she tendered a deed, which was refused by the defendant. At this time the complainant had obtained a deed from the city for the strip of land along the front, but the building restriction remained unreleased.

On October 1, 1920, a supplemental bill was filed setting forth that a deed had been obtained from Torbert and one from all the owners of land then entitled to the benefit of the building restriction, and had tendered to the defendant a third deed on September 27, and that he refused to accept it. By his answer the defendant averred that he had lost an opportunity to sell the property because the title was defective; that since the making of the agreement the market had declined; and that the property was worth less than the contract price, and denied consenting to any delay in perfecting the title. It was also alleged by a further answer to the supplemental bill that the deed or release from the adjoining landowners referred to in the supplemental bill and dated July 27 was not effective to remove the building restriction, but on the contrary imposed an additional and more burdensome restriction. Thereupon, on November 30, an amendment was filed to the supplemental bill alleging that on November 29 the complainant obtained from the adjoining owners another release. On December 7 a second amendment was made to the supplemental bill, setting forth that on December 6 a deed dated December 3 had been tendered conveying a good title, and the defendant had refused to accept it. By his answer the defendant charged the complainant with laches in perfecting her title, and asserted the hardship to him if he be required to take it.

From the above recital of facts it is uncontradicted that neither at the time the contract was made, nor when performance on behalf of the seller was due as extended, was the complainant able to convey a "good marketable fee simple title" to the whole of the property. Not earlier than August 3, the date of the deed to her from the city, was her title marketable, for until that date a vitally important part of the land, viz. the strip along the front was owned by the city. It was not until December 3 that the

building restriction was finally removed, and as to it the defendant was never at any time in default until December 7, which was about four and one-half months after July 20, the time when according to the contract the seller should have been able to give a good, marketable title.

It is urged that time was not of the essence of the contract, and that in equity there is laxity as to enforcing time limits. There is in the agreement no definite declaration that time is of the essence of the contract, and in the absence of such a declaration in a contract it may be so inferred. An extension of time of performance has been considered to be evidence of such intention. *Wiswall v. McGowan, 2 Barb. (N. Y.) 270, 278; Myers v. League, 62 Fed. 654, 10 C. C. A. 571; Agens v. Koch, 74 N. J. Eq. 528, 70 Atl. 348.* So also the fixing a time for the delivery of possession. *Angus v. Koch, supra.*

The purposes for which the property is to be used by the purchaser and the disclosure thereof by the seller is also an element considered in ascertaining the intention and understanding of the parties. But in this case it does not appear that the purpose of the buyer as disclosed to the seller indicated that it was essential to his plans that the seller be ready to convey on the day fixed therefor. Another provision of the contract has a bearing on the point. It was provided:

"In case the title is found to be imperfect the forfeit money paid will be refunded and contract canceled."

This means that the buyer need not wait for the seller to clear his title, at least he need not wait beyond the time when the conveyance of a good title is due him. For the above reasons it was clear that the parties deemed it vitally important that the contract be performed at the stipulated times and therefore time was of the essence of the contract. But whether time is of the essence of the contract, or not, there is no equity or justice which relieves a seller, who at the time of making the contract has not a marketable title to the property sold, from the utmost diligence to perfect his title before it is time for him to convey the land.

Where a contract has not been performed by the complainant within the time fixed by the contract for performance by him, the test of his right to specific performance after the time has

elapsed depends upon whether he has been "ready, desirous, prompt and eager" to perform within the time fixed. *Wilkins v. Evans,* 1 *Del. Ch.* 156, 165.. Perhaps a wider and more moderate test would be whether the party seeking specific performance has done all he ought to have done and taken all the pains he could to be ready to perform on his part the agreement. *Guest v. Homfray,* 5 *Ves. Jr.* 818.

The general principle is thus stated in *Pomeroy on Specific Performance,* § 421:

"If the delay arises from a defect in his title, which the vendor finally cures, or from a difficulty in making the title good, such as the vendee has a right to demand, for example, in obtaining proper evidence, clearing off encumbrances, getting in outstanding estates, and the like; and time is not an essential element of the contract, either from express stipulation, or from the nature of the subject-matter or object of the agreement—then the delay thus occasioned, or the lapse of time while the vendor is engaged in making his title good, will not prevent him from obtaining a decree of specific performance against the purchaser. The doctrines of the equity courts are satisfied if the vendor is able to procure and give a good title at the time of the decree, even though he could not do so at the time of commencing his suit. But a court of equity will not extend this favor to a vendor who has not done all that was in his power to make out a good title within a reasonable time; nor to one who has fraudulently concealed from the purchaser the defect in his title which causes the delay."

In *Taylor v. Longworth,* 14 *Pet.* 372, 174, (10 *L. Ed.* 405), the bill for specific performance was brought by the vendee against the vendor, and Mr. Justice Story thus well states the recognized principle:

"In the first place, there is no doubt that time may be of the essence of a contract for the sale of property. It may be made so by the express stipulations of the parties, or it may arise by implication, from the very nature of the property, or the avowed objects of the seller or the purchaser. And even when time is not thus, either expressly or impliedly, of the essence of the contract, if the party seeking specific performance has been guilty of gross laches, or has been inexcusably negligent in performing the contract on his part; or if there has, in the intermediate period, been a material change of circumstances, affecting the rights, interests or obligations of the parties; in all such cases, courts of equity will refuse to decree any specific performance, upon the plain ground that it would be inequitable and unjust.

"But except under circumstances of this sort, or of an analogous nature, time is not treated by courts of equity as of the essence of the contract; and

relief will be decreed to the party who seeks it, if he has not been grossly negligent, and comes within a reasonable time, although he has not complied with the strict terms of the contract. But in all such cases, the court expects the party to make out a case free from all doubt; and to show that the relief which he asks is, under all the circumstances, equitable; and to account in a reasonable manner for his delay, and apparent omission of his duty."

In *King v. Hamilton*, 4 *Pet.* 311, 329 (7 *L. Ed.* 869), this general principle was stated and applied:

"A party, to entitle himself to the aid of a court of chancery for the specific execution of a contract should show himself ready and desirous to perform · on his part."

In *Tiernan v. Roland*, 15 *Pa.* 429, 438, a bill by vendor against vendee, the Court, after citing Judge Story in *Taylor v. Longworth* said that even where no time for performance is fixed in the contract, "a man cannot call upon a court of equity for a specific performance unless he has shown himself ready, desirous, prompt, and eager; and, therefore, time alone is, in some instances, a sufficient bar to the aid of the court."

Where time is not of the essence of the contract expressly or impliedly, "some inexcusable laches must attach upon the party to estop him from claiming the execution of the contract."

In *Dresel v. Jordan*, 104 *Mass.* 407, 415, the Court said:

"The equitable rule is established by numerous authorities, that where time is not of the essence of the contract, and is not made material by the offer to fulfill by the other party, and request for a coveyance, the seller will be allowed reasonable time and opportunity to perfect his title, however defective it may have been at the time of the agreement, And in all cases it is sufficient for the seller, upon a contract made in good faith, if he is able to make the stipulated title at the time when, by the terms of his agreement or by the equities of the particular case, he is required to make the conveyance, in order to entitle himself to the consideration."

In *Maryland Construction Co. v. Kuper*, 90 *Md.* 529, 45 *Atl.* 197, cited by the complainant, it was said that though the vendor had not a good title when the contract was made or when performance by him was due, still "generally, when he has acted in good faith relief will be granted him, if he is ready to find a clear title at the time of the decree, provided the delay has not prejudiced the purchaser and time is not of the essence of the contract."

The principles here referred to were applied in *Coyle v. Kierski,* 10 *Del. Ch.* 229.

In *Van Riper v. Wickersham, 77 N. J. Eq. 232, 76 Atl.* 1020, 30 *L. R. A. (N. S.)* 25, *Ann. Cas.* 1912*A,* 319, and notes of other cases the Court went so far as to hold that a vendor may in the discretion of the Court be allowed to perfect his title even after decree "if it can be done without hardship to the vendee." It is obvious of course that it would be a great injustice and hardship to apply in the present case the rule stated in this last cited case because of changed conditions, viz. the loss of a chance to resell the property at a large advance, the slump in the real estate market and the disposal by the defendant of the money held to complete the purchase. Besides the defendant rescinded the contract at the earliest feasible date, and did not omit to fulfill the duty referred to in *Houston v. Hurley,* 2 *Del. Ch.* 247.

In no decided case so far as disclosed in an examination of many of them is a vendor whose title is not good at the time of the making of the contract relieved of a duty to diligence in perfecting his title. In most of the decisions the duty to such diligence is affirmatively stated, and his failure to show it is deemed a bar to relief against the vendee. This is only another application of the broader rule of fair dealing always had in mind by courts of equity.

The test of diligence varies in each case. From the undisputed facts in this case the complainant was not prompt to perfect her title before July 20. There were two serious defects, one at least being vital. Even, if when she sold the property she did not know that she did not own a strip fronting her land, and even if she was not then chargeable with knowledge of that defect, she knew it on June 16, more than a month before July 20, for the defect was set forth in an answer of the defendant filed that day, and on June 23 her solicitor argued in his brief that it was not a defect. This defect was not cured until the deed dated August 3 was executed. There is no contention that this deed could not have been obtained earlier.

Again, the existence of the building restriction and its import as a burden on the use of the property was known to the complainant at least on May 17, yet it was not finally removed until

a deed dated November 29 had been made by the owners of land for whose benefit the restriction had been made. A delay of more than six months in correcting this objection demonstrates that the complainant was not prompt in doing all that she could, and should have done, to cure her title. No reason is assigned why the final deed could not have been obtained earlier.

The complaint urges as excuses the acquiescence of the defendant in the delays. But this is denied, and the evidence does not establish clearly such acquiescence. It was not a sufficient excuse for the delays of the complainant that the first bill was filed at the request of the defendant, and was in fact prepared by his solicitor. As soon as it was disclosed to the complainant that she did not own a vitally important part of the land she had sold, she was bound to obtain a title thereto without delay. The result of that litigation so far as that defect was concerned was inevitable and obvious. Instead of diligence to cure her title, she and her counsel insisted that it was good and marketable and did not obtain a deed to vest in her the title until the Chancellor had decreed it to be a fatal defect, and she must stand the consequences of such persistence. This fault, even if there were no other fault on her part as to the curing of other defects, was enough to charge her with lack of necessary diligence and promptness. But there were other defects, viz. the building restriction not cured until more than four months after July 20, and more than six months after being made known to the seller. It is urged by the complainant that there never was a valid building restriction, and so no such defect in the title; but this is not made to appear clearly; and even if there never was an effective and burdensome building restriction, the result would for reasons above stated have been the same.

It is urged by the defendant that there is still a defect in the title in that the city has by proper municipal action voted to widen Delaware Avenue to such an extent as that if it be actually so widened in the future a strip one foot and five and one-half inches wide would be taken from along the whole front of the property in question. No authority is cited to show that the city legislation to widen Delaware Avenue would of itself constitute an incumbrance on the land, or constitute such a defect in the title

thereto as will relieve the purchaser of the duty to accept it. The resolution does not of itself confer any title to the city or impose any restriction or limitation of the use of the land or the sale or disposition thereof. It is urged, however, by the defendant that a provision of the charter of the city affects the rights of the owner of the land in question, viz. the last part of section 116 of the charter of the city, in force since 1909, which is as follows:

"In any proceeding hereafter taken for extending any street, no person or persons shall be entitled to any damages for any house, building or structure hereafter placed or erected within the city of Wilmington upon any ground lying between lines drawn from the building lines of such street to the limits of the city in the direction which the said street would take if extended, as laid down on the map or plan of the city of Wilmington." See Charter, Laws, etc., of Wilmington, Ed. of 1910, p. 113.

It is urged that this does not apply (1) because it relates entirely to the "extending" and not to the widening of a street, and (2) because it is invalid to deprive the owner of a right to damages, for it would be such a limitation by the owner of the use of his property as to amount to a taking thereof without compensation. A court of equity should not require a purchaser to take a deed for land where there is a reasonable doubt of the legal sufficiency of the title of the complainant thereto. *Diamond State Iron Co. v. Husbands*, 8 *Del. Ch.* 205, 223, 68 *Atl.* 240. It is clear that this portion of section 116 does not apply to the widening of existing streets. All the rest of the section except the part quoted above refers to assessment of damages for taking of land to extend, widen, lay out and open streets, while the quoted words apply only to damages for "extending" a street. Besides, it was probably intended to apply to unopened streets in undeveloped portions of the city. On the other hand if it applies to an enactment widening and existing improved streets such as Delaware Avenue, and if it be valid, it is such an encumbrance to the title as would relieve the vendor of the duty to accept it. *Forster v. Scott*, 136 *N. Y.* 577, 32 *N. E.* 976, 18 *L. R. A.* 543, and note. *Evans v. Taylor*, 177 *Pa.* 286, 35 *Atl.* 635, 69 *L. R. A.* 790; *Daniell v. Shaw*, 166 *Mass.* 582, 44 *N. E.* 991.

In *Daniell v. Shaw* the Court found that such an act if valid to be an incumbrance, and that the complainant, the vendor, did not have a marketable title. And then said:

"The plaintiff asks us to declare his title good, by declaring the statute unconstitutional. The defendant ought not to be compelled to accept such a title."

But where as here the Court has a decided conviction upon a point raised in the case, the conviction may without any impropriety be stated.

It is well settled on reasonable grounds that a statute such as the above is invalid if applicable.

"A statute denying compensation for any building erected on land after filing a map of a proposed street across it, although proceedings to open the street or condemn the land have not been begun, and perhaps never will be, is unconstitutional as depriving the owner of property without just compensation." 36 *L. R. A.* (*N. S.*) 278, note; *Forster v. Scott*, 136 *N. Y.* 577, 32 *N. E.* 976, 18 *L. R. A.* 543; *Moale v. Baltimore*, 5 *Md.* 314, 61 *Am. Dec.* 276; *People v. Priest*, 206 *N. Y.* 274, 99 *N. E.* 547—approving and following *Forster v. Scott.*

In *Forster v. Scott*, 136 *N. Y.* 577, 32 *N. E.* 976, there was a statute denying compensation for any building erected on land after filing a map of a proposed street across it, and it was held that it deprives the owner of his property, without just compensation and was, therefore, unconstitutional, though proceedings to open the street or condemn the land may not have been begun and may never be. If valid, the act impairs the value of the property and is an incumbrance, for it restricts the use of the property in that it could not be used for building purposes, except at the risk of the owner of losing the cost of the building at some time in the future:

"Whenever a law deprives the owner of the beneficial use and free enjoyment of his property, or imposes restraint upon such use and enjoyment that materially affects its value, without legal process or compensation, it deprives him of his property within the meaning of the Constitution."

And, further, actual physical taking is not necessary so long as free use and enjoyment is affected.

In *Moale v. City of Baltimore*, 5 *Md.* 314, 61 *Am. Dec.* 276, a statute that no person shall be entitled to damages for any improvement, unless the same shall have been made or erected before the laying out or locating such street, denies the owner of the use of his land without compensation and is unconstitutional and void. See, also, *City of St. Louis v. Hall*, 116 *Mo.* 527, 22 *S. W.*

861, 21 *L. R. A.* 226. These authorities are convincing and none have been found to support a contrary view or uphold the validity of an enactment such as this provision of the charter of the city.

For the defendant there were other principles invoked, such as hardship on the buyer resulting from his loss of a sale of the property at a handsome profit, the depreciation in value of the property, and his parting with the moneys with which he expected to pay for the property, and other reasons why it would be inequitable to compel him now to take the property. But no opinion is expressed on these points.

There is here shown no sufficient reasons for the exercise of that discretion vested in a court of equity to compel the buyer to take this property now, and it is more just to hold the parties to a performance of the contract they have made and not to relieve one of them of the consequences of an inexcusable failure to perform her part of the contract. At that time when it was the duty of the vendor to convey the land she had sold she did not have a good marketable title to all of it in fee simple, and unreasonably failed to perfect her title in time to comply with the terms of her agreement.

The complainant will be denied relief against the defendant, and her bill must be dismissed with costs of all parties on her.

Let a decree be entered accordingly.