### TEXAS CO. v. HERRING.

Circuit Court of Appeals, Eighth Circuit.
April 8, 1927.

No. 7270.

1. Mines and minerals ⬯74—Where no time for performing was specified in contract for sale of oil lease, law implies reasonable time, which depends on circumstances.

Where no time for performance of contract for sale of oil and gas lease was specified in contract, law implies reasonable time; what is reasonable time depending on all circumstances of case.

2. Specific performance ⬯119—Party in default, seeking specific performance of contract in which time is material, has burden of excusing default.

Party, seeking specific performance of contract in equity court, will not readily be afforded relief, if he has not performed on his own part within time allowed in contract; and where time for performance is material, as distinguished from essential element, party in default has burden of explaining and excusing his default.

3. Specific performance ⬯100—Great decrease in value of land is important in determining whether specific performance shall be granted delaying party.

Great decrease in value of land during delay in performing land contract is important element to be considered in determining whether specific performance shall be granted to party responsible for delay.

4. Specific performance ⬯92(1)—Tender of oil lease 9½ months after execution of agreement, and over 30 days after acquiring title, held not within reasonable time.

Where plaintiff, who by written contract agreed to sell to defendant his interest in oil and gas lease under terms of agreement between plaintiff and third persons, did not tender performance until 9½ months after execution of contract and more than 30 days after he acquired title, during which time value of lease fell from high point to nearly zero, held that, in view of local custom requiring leases to be tendered within 10 days or 2 weeks, plaintiff did not tender performance within reasonable time and was not entitled to specific performance.

5. Mines and minerals ⬯74—Mineral grant, requiring grantee to pay annual rent for surface occupied, held not merchantable title, within contract for oil lease covenanting against incumbrances.

Mineral grant, providing that grantees or their assigns agreed to pay reasonable rental, not exceeding $3 annually per acre, for portion of surface occupied in their operations, held not to convey merchantable title required by contract to sell oil and gas lease and covenant of assignment of lease, providing that plaintiff's interests in property were free of all incumbrances, and plaintiff was not entitled to specific performance.

6. Specific performance ⬯95—Vendor, failing to offer to remove incumbrance at trial, or show it could be removed, is not entitled to specific performance.

Specific performance of contract to purchase will not be compelled, where vendor at time of trial fails to offer to remove incumbrance or show that it could be removed by him.

Appeal from the District Court of the United States for the Western District of Oklahoma; John H. Cotteral, Judge.

Suit by F. E. Herring against the Texas Company. Decree for plaintiff, and defendant appeals. Reversed, with directions.

C. B. Cochran, of Oklahoma City, Okl. (C. B. Ames, of Oklahoma City, Okl., John R. Ramsey and B. W. Griffith, both of Tulsa, Okl., Harry T. Klein, of New York City, and Ames, Lowe & Cochran, of Oklahoma City, Okl., on the brief), for appellant.

A. Carey Hough, of Oklahoma City, Okl. (George A. Henshaw, of Oklahoma City, Okl., on the brief), for appellee.

Before KENYON and BOOTH, Circuit Judges, and KENNAMER, District Judge.

BOOTH, Circuit Judge. This is an appeal from a decree for specific performance of a contract. On the 10th of April, 1923, appellee Herring made a contract with appellant, the Texas Company, reading as follows:

### "Contract.

"This agreement, entered into this 10th day of April, 1923, by and between F. E. Herring, party of the first part, and the Texas Company, party of the second part, witnesseth:

"That the party of the first part hereby assigns and sells to the party of the second part all of his right and interest in and to an oil and gas lease under the terms of an agreement had by and between the said F. E. Herring and W. A. Sanders and T. R. Wise, dated the 30th day of March, 1923, and covering the following described lands in Beckham county, Oklahoma, to wit: The west one-half of the northwest quarter of section 26, township 9 north, range 24, W. I. M. at and for the purchase price of $150 per acre.

"It is understood that this assignment shall carry a right to all of the oil and gas in and under said premises excepting a one-eighth royalty. When party of the first part procures a title to said interest, he shall submit an abstract of title to the party of the second part, and the party of the second part shall have five days for the examination thereof. and to notify party of the first part of any corrections to be made, and the party of the first part shall have fifteen days for correction of any defects, and during this time this contract shall remain in force and effect.

"This contract, with a deposit of $3,000 made by the party of the second part, shall be placed in the First National Bank of Sayre; balance of purchase price to be paid when a merchantable title is made. [Signed] F. E. Herring. The Texas Company, by F. M. Kelleher, Attorney in Fact."

Herring had no lease from Sanders and Wise, but he had a contract for a lease, reading as follows:

"This agreement, made and entered into this 30th day of March, 1923, by and between W. A. Sanders and T. R. Wise, parties of the first part, and F. E. Herring, party of the second part, witnesseth:

"That the parties of the first part hereby agree to sell and convey to the said party of the second part an oil and gas lease, five-year commercial 88 form, and a deed carrying one-half of the royalty, in and to the following described lands in Beckham county, Oklahoma, to wit: The west half of the northwest quarter of section 26, township 9 north, range 24 W. I. M.—in and for the purchase price of $25 per acre.

"It is understood that the parties of the first part hold said land under contract for deed with J. Luther Taylor, and this contract on their part is made subject to securing such deed, and if for any reason a good and merchantable title cannot be conveyed by the parties of the first part, both parties shall be relieved from this contract without further obligation. Parties of the first part shall have *fifteen* days to procure said title and to sub-

mit an abstract of title showing the merchantable title to the lands described and party of the second part shall have five days for the examination thereof. If title not procured within said fifteen days, party of second part shall have the privilege of canceling this contract.

"This contract, with $500 paid by the party of the second part, shall be placed in the First National Bank of Sayre, and the balance of the purchase price to be paid on approval of abstract. [Signed] W. A. Sanders, T. R. Wise, Parties of the First Part. [Signed] F. E. Herring, Party of the Second Part."

In his bill, Herring alleged that on January 29, 1924, he made tender of performance under his contract with appellant. The bill further alleged that performance was refused by appellant.

The defenses to the suit were: That there was no mutuality in the contract; that the contract was too indefinite to be the subject of specific performance; that the contract was void under the statute of frauds; that Herring did not tender in performance on his part a merchantable title; that the tender of performance on the part of Herring was not made within the time limited by the contract, or within a reasonable time.

[1] We take up the last defense first. The contract was dated April 10, 1923, and tender of performance was not made until January 29, 1924. No time for performance was fixed in the contract itself, and we do not think that the time provisions in the contract which Herring had with Sanders and Wise were applicable; hence a reasonable time would be implied by law. What was a reasonable time depends upon all the facts and circumstances of the case. Briefly stated they are as follows:

The land in question was in Beckham county, Oklahoma, and in the vicinity of lands where oil wells were being drilled; there were already two producing wells in the county; the acreage was increasing in value; the contract between appellee and Sanders and Wise looked to an early perfecting of title, and appellee, under that contract, was in a position to protect himself against unreasonable delay by cancellation of the contract; the subject-matter of the contract in controversy, an oil and gas lease, was of such character that a short time would be considered a reasonable time in which to perfect title and tender performance; the custom of the trade in selling oil and gas leases of lands within several miles of a discovery well, in what had theretofore been unproven territory, was that the lease should be tendered in ten days or two weeks;

both parties knew that the market value of such leases in that locality was in a rapidly fluctuating state; the vendee was not given possession of the land; $3,000 was placed in escrow by the vendee, upon which loss of interest was daily accruing; the delay was being caused by no fault or neglect on the part of the vendee. On the other hand, appellant knew that Herring was not in a position to perform at once. The contract which Herring had with Sanders and Wise showed that.

It is claimed by appellee, and his testimony tends to show, that appellant knew that the title was in litigation. This is denied by appellant, and we are of opinion that the weight of the evidence supports appellant's contention that it did not know at the time the contract with appellee was made that the title was in litigation. However, appellant learned this before May 8th, and on that date wrote to appellee that it did not consider that it was bound to await the outcome of the litigation, and demanded performance. Appellee replied that the title would be perfected at the earliest possible date. No extension was asked by appellee, and none was granted by appellant. The incomplete title finally procured was not the result of an adjudication in the litigation, but the result of a compromise, and there is no satisfactory showing that this compromise could not have been obtained at any time.

Appellee did not tender performance until 9 months and 16 days after the contract was made. Furthermore, the appellee did not tender his title until more than 30 days after he acquired the same. He acquired the title tendered by compromise of the litigation December 24, 1923. He did not tender performance until January 29, 1924. This delay is attempted to be explained or excused by reason of the fact that appellee had not yet obtained the abstract of title, and, when he did obtain it, he found that it was necessary to get a patent from Washington, and that this caused the delay. But no excuse is shown for not getting the abstract sooner, and the patent sooner. Both were obtainable during the 9 months which had elapsed since the date of the contract between appellee and appellant. The abstract was not obtained until December 24 or 25, 1923, or possibly not until January, 1924. The patent was not obtained and filed until January 21, 1924. During the 9 months period the value of the lease had fallen from a high point to practically zero. One of the wells being drilled in the vicinity was plugged and abandoned between January 14 and January 28, 1924.

[2] When a party comes into equity seeking specific performance of a contract, he will not be afforded relief readily, if it appears that he has not performed on his own part within the time allowed. A distinction is made between cases where time is essential and where it is merely material. Conceding, but without deciding, that the case at bar falls within the latter class, yet the party in default has the burden of explaining and excusing the default. Pomeroy on Specific Performance (3d Ed.) § 402, reads:

"If time is material a failure to comply with the terms of the contract is not *necessarily* a bar to an enforcement; but it throws upon the defaulting party the burden of explaining his neglect and of satisfying the court that, notwithstanding the failure, a denial of the remedy to him would be inequitable. Certain conditions must, therefore, be met and fulfilled by the party who asks the aid of the court in the face of his delay. In the first place, the delay must not have been too long; and what is reasonable or unreasonable in point of duration must depend very largely upon the circumstances of each case, and especially upon the cause or occasion of the delay. A delay resulting even from inevitable accident may be so long, that it would be inequitable to enforce performance upon the other party. In the second place, the delay, whether long or short, must be accounted for and explained by facts and circumstances which are regarded by courts of equity as sufficient to justify and excuse it."

And again (section 403):

"Except in the comparatively few cases where time is immaterial, and delay, however long, is hardly of any consequence, the doctrine is familiar and fundamental that a party seeking the remedy of specific performance as the actor * * * must show himself, in the language of many judges, to have been 'ready, desirous, prompt, and eager.'"

And again (section 421):

"If the delay arises from a defect in his title, which the vendor finally cures, or from a difficulty in making the title good—such as the vendee has a right to demand—for example, in obtaining proper evidence, clearing off incumbrances, getting in outstanding estates, and the like; and time is not an essential element of the contract, either from express stipulation, or from the nature of the subject-matter or object of the agreement—then the delay thus occasioned, or the lapse of time while the vendor is engaged in making his title good, will not prevent him from obtaining a decree of specific performance against the purchaser. The doctrines of the equity courts are satisfied if the vendor is able to procure and give a good title *at the time of the decree,*

even though he could not do so at the time of commencing his suit. But a court of equity will not extend this favor to a vendor who has not done all that was in his power to make out a good title within a reasonable time."

In Taylor v. Longworth, 14 Pet. 172, 174, 175 (10 L. Ed. 405), the court said:

"And even when time is not thus, either expressly or impliedly, of the essence of the contract, if the party seeking a specific performance has been guilty of gross laches, or has been inexcusably negligent in performing the contract on his part, or if there has, in the intermediate period, been a material change of circumstances, affecting the rights, interests or obligations of the parties, in all such cases, courts of equity will refuse to decree any specific performance, upon the plain ground that it would be inequitable and unjust. * * * But in all such cases the court expects the party to make out a case free from all doubts, and to show that the relief which he asks is, under all the circumstances, equitable, and to account in a reasonable manner for his delay, and apparent omission of his duty."

See, also, Kittinger v. Rossman, 12 Del. Ch. 276, 112 A. 388.

[3] Great decrease in value of the land during the delay is an important element to be considered in determining whether specific performance shall be granted to the party responsible for the delay. Holgate v. Eaton, 116 U. S. 33, 6 S. Ct. 224, 29 L. Ed. 538. In Galliher v. Cadwell, 145 U. S. 368, 373, 12 S. Ct. 873, 875 (36 L. Ed. 738), the court said: " * * * Laches is not like limitation, a mere matter of time, but principally a question of the inequity of permitting the claim to be enforced—an inequity founded upon some change in the condition or relations of the property or the parties."

In Lemoine v. Dunklin County (C. C. A.) 51 F. 487, 492, this court said:

"Laches is imputed independently of the statute of limitations. Courts of equity apply the doctrine on principles of their own, and time is only one of the circumstances to be considered in its application. * * * The lapse of time which will induce the court to apply the doctrine may be longer or shorter, depending on the circumstances of the particular case. Among the circumstances which will induce its application in a comparatively brief period are the changed condition of the property, particularly in respect to its value."

In Taylor v. Salt Creek Consol. Oil Co., 285 F. 532, 539, 540, this court, after reviewing a large number of cases touching the question of laches, said:

"While the holdings of the court as indicated by these cited cases may differ slightly, through them all runs a similar principle, viz.: The inequity of permitting claims to be enforced where the party asserting the same has not been diligent and the enforcement under conditions at the time the attempt is made would result in injustice. Many elements bear upon the question of due diligence in prosecuting; such, for instance, as the nature of the property in dispute; the nature of the remedy; the kind of agreement sought to be enforced; the nature of the relief demanded. * * *

"The nature of the property in dispute may require more prompt action than otherwise. This is especially true as to mining and oil properties such as the situation in the case at bar. There is a special reason as to these properties why the courts should hold the parties to a rigorous rule as to laches. * * * The doctrine is well settled, both in the English courts and the courts of this country, as to the relentless enforcement of the doctrine of laches where the subject of controversy is mining and oil property, purely speculative in value."

[4] Applying the principles of the foregoing cases to the facts in the case at bar, we conclude that plaintiff failed to tender performance within a reasonable time, and for that reason he is not entitled to the relief of specific performance.

[5] Furthermore, we do not think that the evidence shows a tender of full performance on the part of appellee. The contract for lease between appellee and Sanders and Wise contemplated that the latter parties should obtain title to the land. They did not do this, but obtained instead a mineral grant from one Taylor, the former owner with whom the litigation was had. This mineral grant contained the following provision: "If oil or other minerals be found in paying quantities then, the grantee or their assigns agree to pay a reasonable rental not to exceed $3 per year per acre for such portion of the surface as they shall occupy in their operations so long as they shall use same."

This mineral grant with its conditions appeared on the abstract which was tendered by appellee to appellant. Yet in the assignment of lease which appellee tendered at the same time appears the covenant "that the undersigned has good right and authority to sell and convey the same, and that said rights, interest and property are free and clear from all liens and incumbrances, and that all rentals and royalties due and payable thereunder have

been duly paid." Clearly the condition contained in the mineral grant from Taylor was an incumbrance; and hence the title tendered by appellee to appellant was not a merchantable title, such as he was bound to furnish. In Maupin on Marketable Title to Real Estate (3d Ed.) § 305, it is stated:

"A purchaser cannot be compelled to complete his purchase or accept the title if there is an incumbrance on the property which the vendor cannot or will not remove, and which the purchaser cannot himself remove by an application of the purchase money. Of this kind are easements, servitudes, rights of way, reservations of minerals, building restrictions, restrictions as to uses, unexpired leases, charges upon the property for the support of particular persons, inchoate rights of dower, outstanding life interests, *outstanding contract interests.*" (Italics ours.)

See, also, Gates v. Parmly, 93 Wis. 294, 66 N. W. 253, 67 N. W. 739; Campbell v. Harsh, 31 Okl. 436, 122 P. 127.

Effort is made by appellee to minimize this incumbrance, and to show that the possibility is remote of its ever being an embarrassment to appellant. We do not think that the showing is such as to render the incumbrance negligible.

[6] In certain cases where on the trial the vendor shows that the incumbrance has been removed, specific performance has not been refused. Rice v. Theimer, 45 Okl. 618, 146 P. 702. But in the case at bar no offer was made by appellee to remove the incumbrance, or to show that it could be removed by him. In such cases specific performance will not be compelled. Hardy v. Deskins, 95 Okl. 108, 215 P. 738.

We conclude that the title offered by appellee in performance of his contract was not a merchantable title. As the foregoing considerations dispose of the case, it is unnecessary to consider the other questions raised.

Decree reversed, with instructions to enter decree dismissing the bill.