BECKWITH et al. v. CLARK.

(Circuit Court of Appeals, Eighth Circuit. May 31, 1911.)

No. 3,351.

*(Syllabus by the Court.)*

1. FRAUDS, STATUTE OF (§ 103*)—CONTRACT OF SALE OF LAND BY LETTERS ADDRESSED TO CONTRACTING PARTIES NOT ESSENTIAL.

A contract to sell and convey land valid under the statute of frauds of Kansas may be made by letters connected by direct references to each of them, one of which is signed by the party to be charged.

It is not indispensable that such letters should be addressed to one of the contracting parties, and an agreement may be sustained which consists of letters of the vendor addressed to a third party who conveys to the vendee the messages they contain, and who writes over his own signature to the vendor the messages the vendee gives him in reply.

[Ed. Note.—For other cases, see Frauds, Statute of, Cent. Dig. § 199; Dec. Dig. § 103.*]

2. SPECIFIC PERFORMANCE (§ 117*)—PLEADING—IMMATERIAL VARIANCE BETWEEN AVERMENTS AND PROOFS.

A complaint in a bill for specific performance alleged that the contract of sale of the land was made by three letters, the last of which was dated June 25, 1906. The decree rested on proof that the contract was made by one telegram and five letters, the last of which was dated June 30, 1906.

*Held,* the variance was immaterial.

[Ed. Note.—For other cases, see Specific Performance, Cent. Dig. §§ 377-381; Dec. Dig. § 117.*]

3. COURTS (§ 367*)—FEDERAL COURTS—STATE RULES OF PROPERTY PREVAIL IN.

Rules of property established by the construction by the highest judicial tribunal of a state of its Constitution or statutes prevail in the national courts where no question of right under the Constitution or

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

laws of the nation and no question of general or commercial law is involved.

[Ed. Note.—For other cases, see Courts, Cent. Dig. §§ 958, 959; Dec. Dig. § 367.*

Conclusiveness of judgment between federal and state courts. See notes to Kansas City, Ft. S. & M. R. Co. v. Morgan, 21 C. C. A. 478; Union & Planter's Bank v. City of Memphis, 49 C. C. A. 468.]

4. FRAUDS, STATUTE OF (§ 115*)—CONTRACTS IN KANSAS—SIGNATURE OF PARTY TO BE CHARGED ALONE ESSENTIAL.

The signature of the party to be charged without the signature of the other contracting party is sufficient to sustain the validity of a contract of sale of land under the statute of frauds of Kansas. Gen. Stat. Kan. 1909, c. 45, § 3838.

[Ed. Note.—For other cases, see Frauds, Statutes of, Cent. Dig. §§ 242–250; Dec. Dig. § 115.*]

5. VENDOR AND PURCHASER (§§ 188, 172, 196*)—ACCOUNTING FOR RENTS AND PROFITS AND INTEREST—EXCEPTION WHERE PURCHASE PRICE KEPT READY.

The general rule is that from the time when a contract of sale of land should be performed the land is in equity the property of the vendee held by the vendor in trust for him, and the purchase price is the property of the vendor held in trust for him by the vendee, and that upon specific performance the vendor is liable to account for the rents and profits and the vendee for the interest on the purchase price.

There is this exception to the rule: That where the vendor fails or refuses to convey at the time for performance, and the vendee, to the knowledge of the vendor, deposits and keeps the purchase price subject to the order of the vendor upon his delivery of his deed, and derives no benefit from it, the vendor must account to the vendee for the rents and profits of the land, but the vendee is not liable to account for the interest on the purchase price.

[Ed. Note.—For other cases, see Vendor and Purchaser, Cent. Dig. §§ 376, 349–351, 404–406; Dec. Dig. §§ 188, 172, 196.*]

Appeal from the Circuit Court of the United States for the District of Kansas.

Bill by David O. Clark against Putnam Beckwith and Herbert H. Beckwith, trustees. Decree for complainant, and defendants appeal. Affirmed.

Winslow Evans (John M. Cleary, on the brief), for appellants.
E. C. Sweet (R. R. Rees, on the brief), for appellee.

Before SANBORN and VAN DEVANTER, Circuit Judges, and REED, District Judge.

SANBORN, Circuit Judge. This is an appeal from a decree for the specific performance of a contract to sell and convey land which was evidenced by letters. The alleged vendor was Edwin Gaylord of Pontiac in the state of Illinois, who has since died and to whose interest in the land and in this litigation the appellants have succeeded as trustees under his will. The vendee was David O. Clark of Cloud county, Kan., who brought this suit against Gaylord before his death. The issues in the suit were whether or not Gaylord made a contract of sale of the land that was valid under the statute of frauds of Kansas, and whether or not Clark performed his part of the agreement. The case was referred to a special master to hear the evidence, find

the facts, and recommend a decree. He found the facts alleged by the complainant, and recommended a decree in his favor. Upon a hearing upon exceptions to the master's report the court below confirmed it with the modification that the purchaser should not be required to pay interest upon the purchase price of the property and rendered a decree for the complainant accordingly.

The first reason urged by counsel for the appellants for a reversal of this decree is that the name of the vendee did not appear in the three letters which they contend the complainant alleged in his bill constituted the agreement. The master found that this agreement rested upon 13 letters, each of which was marked at the hearing with one of the first 13 letters of the alphabet. In his bill the complainant averred that prior to June 22, 1906, Gaylord had by means of letters requested Garrett Davidson of Glasco, Kan., to make it known that he was willing to sell all that part of his land in section 24 in a certain township in Cloud county, Kan., east of the railroad and the public highway through it; that Davidson informed the complainant of that fact, and the latter through Davidson, on June 22, 1906, made a written offer to Gaylord to buy the land and pay $55 per acre for it, Gaylord to retain the landlord's share of the wheat and Clark to have the landlord's share of the corn raised upon it in 1906; that Gaylord on June 25, 1906, replied in writing to that offer accepting it; that by means of subsequent letters they agreed that the county surveyor should ascertain the number of acres of the land and its description; that the surveyor did so, the complainant deposited $16,500, which was more than the amount of the purchase price, with the First National Bank of Glasco, with instructions to pay the purchase price to Gaylord out of this deposit on receipt of his deed; that the complainant asked Gaylord to execute the deed, and notified him that the purchase price was on deposit with the bank subject to his order on receipt of the deed, but Gaylord refused to perform the contract.

The master found that Garrett Davidson was a farmer in Cloud county, Kan., where the land was situated, in no manner connected with Gaylord or Clark, except in a friendly way; that he received no compensation from either party, but acted for each when requested; that at the instance of Gaylord he mentioned the fact that the land was for sale, and at the instance of Clark he made the offer of $55 per acre which Gaylord accepted. Appellants specify this finding as error, but the record amply sustains it. The letters clearly disclose the fact that Davidson stood in much the same relation to the contracting parties that the post office bears to correspondents through it. He was the agent of the sender of each message for the purpose of conveying it to the other contracting party. He carried the message of Gaylord that he was willing to sell his land, a message which was contained in a letter from Gaylord to himself, to Clark, and for Clark he sent the latter's message to Gaylord in a letter he wrote himself that he (Clark) would give $55 per acre for the land. When Gaylord answered in a letter to Davidson that he accepted this offer, Davidson carried this message to Clark, and for the latter he wrote to Gaylord that Clark was the purchaser. The letter he wrote in answer to Gay-

lord's acceptance demonstrated his agency to bear messages for each. He wrote:

"In my telegram I said make deed to David O. Clark. He is the man to whom I have sold it. We (evidently he and Clark), will be satisfied with anything that is right in regard to the fence and the mill."

In this state of the case each of the letters which is connected by direct reference with the other letters that treat of the sale is competent evidence to prove the contract.

[1] It is not essential to a valid agreement by means of letters under the statute of frauds that they should be addressed by one contracting party to the other. Pomeroy on Contracts, § 84; Hollis v. Burgess, 37 Kan. 487, 494, 15 Pac. 536.

We return to the letters. The first one was written by Gaylord to Davidson, was dated May 19, 1906, and in it he wrote Davidson that he was willing to sell the land in question and asked him to let him know if he was acquainted with any one that was likely to want to buy it. The second letter is Davidson's answer. It is dated June 22, 1906, and in it he writes to Gaylord that he had shown his letter to many, but never had an offer until that day, that he then had an offer of $55 per acre, Gaylord to have the landlord's share of the wheat crop and the purchaser the landlord's share of the corn crop for the year 1906. The third letter is addressed to Davidson, is dated June 25, 1906, is signed by Gaylord, and in it he writes that he accepts the offer made to him in the letter of June 22, 1906. The fourth letter is Davidson's answer to the letter of June 25, 1906. It is dated June 26, 1906, and in it he writes to Gaylord that he has received his letter of June 25th, accepting his proposition, and that David O. Clark is the man to whom he has sold the land, and to whom Gaylord should make the deed. There was also in evidence a telegram from Davidson to Gaylord dated June 27, 1906, to make the deed to David O. Clark, and a letter dated June 30, 1906, in which Gaylord wrote to Davidson that he had received the latter's letter of June 26, 1906, that his tenant, Palmer, would get the description of the land east of the railroad from the county surveyor and the number of acres in the tract as soon as he could and would forward it to him, and that then he would make the deed. The letters which have been recited disclosed the name of the vendee and the letter of June 30, 1906, which was signed by Gaylord, together with the letters going before it evidenced an agreement, after the name of Clark had appeared in the letter of June 26, 1906, as the purchaser, to sell the land and to make the deed.

[2] Now, the contention of counsel for the appellants here is that the complainant averred in his bill that the agreement was concluded by the letter of June 25, 1906, that no contract was consummated by that letter or at that time because the name of the vendee had not then appeared in the correspondence, and that, although the evidence proved a valid agreement which disclosed the name of the purchaser concluded by the letter of June 30, 1906, five days later, the decree cannot stand because the proof does not correspond with the averments of the bill. The argument is too subtle to be sound. It is true that one may not plead one cause of action and recover upon another, and that

it is as essential that the pleadings as that the proof shall correspond with and sustain the decree. But this rule relates to the substantial averments of a pleading which state the cause of action and to those only. It does not require that the decree or the proof shall correspond with every immaterial detail of the evidence that may be set forth in a pleading. The cause of action here was the breach by Gaylord of his contract to sell and convey this land, and that is the cause of action that was pleaded in the bill and the cause upon which the decree is founded. The essential averments of that cause were those which showed that Gaylord made the agreement to convey the land by means of letters physically or by direct reference to each other connected together, one of which was signed by him, and that he had refused to perform it. It was not material that he consummated his contract on June 25, 1906, by his letter of that date rather than on June 30, 1906, by his letter dated on that day, and this variance between the pleading, and the proof upon which this decree is based presents no ground for its reversal.

Nor was there any error in the receipt in evidence and the consideration of the other letters and telegrams sent subsequent to June 25, 1906, relating to the performance of the contract, because they were material to the question whether or not Gaylord committed a breach of the contract, and even if there had been error in their receipt it is not reviewable now, because no exception to the rulings which admitted them appears in the record.

The next objection to the decree is that none of the letters was signed by Clark, that he was not bound to buy and pay for the land, and that there was no mutuality in the contract. This is an agreement regarding title to real property in the state of Kansas, and it is governed by the law of that state. Rules of property established by the construction by the highest judicial tribunal of a state of its Constitution or statutes prevail in the federal courts where no question of right under the Constitution or laws of the nation and no question of general or commercial law is involved. Traer v. Fowler, 75 C. C. A. 540. 542, 144 Fed. 810, 812; Hoge v. Magnes, 29 C. C. A. 564, 566, 85 Fed. 355, 357.

[4] The statute of frauds of Kansas provides that:

"No action shall be brought * * * upon any contract for the sale of lands * * * unless the agreement upon which such action shall be brought, or some note or memorandum thereof shall be in writing and signed by the party to be charged therewith, or some other person thereunto by him or her lawfully authorized in writing." General Statutes of Kansas 1909, c. 45, § 3838.

In Guthrie v. Anderson, 47 Kan. 383, 386, 28 Pac. 164, Anderson brought an action on a contract for the sale of certain land to Guthrie for $2.000, $200 in cash and $1,800 in three months, which Anderson and his wife had signed and Guthrie had not, to recover the deferred payment of $1,800 after Guthrie had paid $200, and the Supreme Court held that he could not recover because Guthrie was the party to be charged and he had not signed the agreement. That court proceeded to say:

"If the Andersons desired that Mr. Guthrie should be charged by the writing or memorandum, they should have required him or his agent to have signed the same. The Andersons, who signed the writing or memorandum, are bound thereby, and could not set up the, statute in bar. Mr. Guthrie is not bound, because neither he nor his agent signed, and therefore he can plead the statute. At one time it was a serious question whether the courts would specifically execute a writing or memorandum concerning lands, where one party only was bound; that is, where only one party had signed. It was held by some of the courts that in such a case, the writing or memorandum not being mutually binding, one party ought not to be at liberty to enforce at his pleasure an agreement which the other was not entitled to claim. But the authorities now agree that where an action is brought upon a writing or memorandum for or concerning the sale of land, if the party sought to be charged in the action signed the same by himself or agent, he is liable thereon, and he cannot successfully plead as a defense that the plaintiff has not signed. To the party sought to be charged, who has signed, the statute is no defense. Hawkins v. Holmes, 1 P. Wms. 770; Clason v. Bailey, 14 Johns. [N. Y.] 484–489; Justice v. Lang, 42 N. Y. 493 [1 Am. Rep. 576]; Fry, Spec. Perf. § 497; Waterman, Spec. Perf. § 239; Rogers v. Saunders, 16 Me. 92 [33 Am. Dec. 635]; Sams v. Fripp, 10 Rich. Eq. [S. C.] 447."

The theory of the rule here declared is that a parol agreement to sell and to pay for the land is not made void by the statute, and therefore there is no lack of mutuality in it, but the only effect of the statute is to prevent any proof of it against a party to be charged who has not signed it. Under this rule of property of the state of Kansas, therefore, conceding that Clark made no written agreement to buy the land, he made a parol promise so to do which was sufficient to give mutuality to the contract and the statute permitted proof of it against Gaylord who was the party to be charged and had signed it. Neither Clark nor his successors in interest could be heard to say that the contract was void because the complainant failed to sign it, for he was not the party to be charged. Schneider v. Anderson, 75 Kan. 11, 17, 88 Pac. 525, 121 Am. St. Rep. 356.

Another argument of the appellants is that the minds of the parties never met because Gaylord supplemented his letter of acceptance of June 25, 1906, by another of the same date in which he wrote that the wind pump and fence belonged to Palmer, the tenant, and Davidson answered for Clark, "We will be satisfied with anything that is right in regard to fence and mill." But Gaylord could not sell what he did not own, and, after this information was given to Clark, both parties reaffirmed the contract, Gaylord by written promise to make the deed and Clark by depositing the purchase price in the bank payable to the order of Gaylord upon the delivery of the deed. Counsel say their minds never met because there never was any agreement between them relative to the place of payment of the purchase price.

The proved facts regarding this matter were these: On June 26, 1906, before the number of acres in the tract was ascertained, Clark gave his check for $16,500 payable to G. H. Bernard, cashier, certified by Bernard's bank, the First National of Glasco, Kan., and directed him to use it to pay for the land bought from Gaylord at the rate of $55 per acre, and Davidson and the bank then notified Gaylord that this money was at his disposal as soon as his deed of the land was received. On June 27, 1906, Gaylord wrote Davidson that, after he received the purchaser's name, he would have his deed executed, leave it

with D. C. Eylar, president of the Pontiac Bank, that the buyer could get his banker at Glasco to send a draft to the Pontiac Bank for the purchase price with instructions to hold it until he was satisfied that the deed was good, and after the draft was accepted forward the deed to the purchaser. On June 30, 1906, after Gaylord had received Davidson's letter of June 26, 1906, which disclosed the purchaser's name, he wrote to Davidson that he had employed Eylar, the president of the Bank of Pontiac, to help him fix up the deal, and that Eylar would correspond with the officers of the Glasco Bank. He did so. He wrote that he had seen the telegram that $16,500 was in that bank at the disposal of Gaylord as soon as a good deed was received properly signed, and that he understood that, as soon as Gaylord and his wife made a good deed, the Glasco Bank was to remit to the Pontiac Bank $16,500 net to Gaylord there without any exchange costs or charges. Bernard, the cashier of the Glasco Bank, wrote in answer to this letter that the Glasco Bank had $16,500 in its hands to be used to pay for the land bought by Clark which was to be surveyed and measured "so that correct description can be given and the exact amount of land in the tract ascertained," and that the Glasco Bank was to remit for Clark for the credit of Gaylord out of this money on deposit with it a sufficient amount to pay $55 per acre for the land as soon as the deed was properly executed and in its hands. On July 3, 1906, Eylar wrote in reply that Bernard's letter had been read to Gaylord, that Gaylord "understands the same as you that Mr. Clark is to pay $55 per acre for what number of acres the tract to be conveyed by Dr. Gaylord and wife contains. * * * I am instructed by Dr. Gaylord to say that whatever number of acres the survey shows he is to have $55 per acre for, the same to be net to him here, without any charges or deductions, the same as stated in my former letter." On July 6, 1906, Bernard wrote the Pontiac Bank, inclosed in his letter a description of the land which he had obtained from the surveyor and a form of deed, asked that Gaylord execute the deed and send it to the Glasco Bank with instructions as to delivery, and declared that immediately upon its receipt the Glasco Bank would forward its draft for the purchase price for the number of acres shown by the description. On July 14, 1906, Eylar wrote that Gaylord had informed the Pontiac Bank that circumstances were then such that he could not consummate the sale, and that the Glasco Bank was at liberty to release the money which it had on deposit to the party to whom it belonged. Here the correspondence ended, and in our opinion it not only discloses no disagreement, but evidences a perfect concord of the minds of the parties in relation to the time, the place and the manner of the payment, the delivery of the deed, and the performance of the contract to sell. Counsel also contend that the minds of the contracting parties never met upon the number of acres in the tract, and that they never agreed that the county surveyor should ascertain it. The proof is, however, that each party through his agent employed the county surveyor to ascertain and report the number of acres and the description of the land; that he made his first report to Gaylord's agent and informed him that it was not accurate because he had lacked

time to make it so; that he subsequently took the time to make it accurate and reported the accurate description and number of acres to Bernard, he sent that description and number to the Pontiac Bank in his letter of July 6, 1906; and that no objection was ever made by Gaylord to the number of acres so reported, but he absolutely refused to perform his contract. That contract was valid without any agreement upon the number of acres in the tract, for that is certain which can be made certain and the evidence satisfies that the parties did in fact agree upon the number of acres which the surveyor finally found. There was no error in the finding of the master and the court that Gaylord made a valid contract for the sale of this land, and then refused to perform it.

It is assigned as error that, while the decree charges the vendor with the rents and profits of the land from 1906 until the rendition of the decree, it fails to charge the vendee with interest on the purchase price from July 6, 1906, when the contract should have been performed, until the decree was rendered. But the proof is plenary that by means of the certified check which has been described and Clark's direction to Bernard and the Glasco Bank he deposited in that bank before July 6, 1906, and kept there from that time until the hearing the purchase price of this land payable to the vendor, or his successors in interest, on the single condition that he or they deliver to Bernard or the bank the deed to which he was entitled; that he and the bank which held the money notified Gaylord in June, 1906, that this money was on deposit in the bank for this purpose subject to his order; and that Clark never used this money for any other purpose or derived any benefit from it, but always kept it ready to pay for the land. The reason for and the purpose of the specific performance of a contract is to place the parties as near as may be in the same situation that they would have occupied if they had voluntarily performed it. The compulsory performance of it and the terms of the decree therefore rest in the sound judicial discretion of the chancellor which should be exercised to attain this object. All the rules which have been established for the molding of decrees have been framed and followed and all the exceptions to them have come into being to accomplish this purpose and are subordinate to its attainment.

[5] One of these rules is that from the time when the contract should be performed the land is in equity the property of the vendee held by the vendor in trust for him, and the purchase money is in equity the property of the vendor held by the vendee in trust for him, and that, when a decree for specific performance is rendered, the vendor is liable to account for the rents and profits of the land and the vendee for the interest on the purchase price. The application of this rule of accounting is generally just and equitable, because between the due date of performance and the decree the vendor usually receives the rents and profits and the vendee usually retains and has the use of the money requisite to pay the purchase price. But where, as in the case at bar, the purchaser does not retain or derive any benefit from the money required to pay the purchase price, but places and keeps it, to the knowledge of the vendor, subject to his order upon his

delivery of his deed, the application of this rule would be inequitable. It would reward the vendor for his own wrong. It would enable him by simply refusing to perform his contract to deprive the vendee of the possession and use of property which might yield no rents or profits and at the same time to mulct the vendee to the extent of interest on the amount of the purchase price which he does not receive. These considerations have brought forth the exception to the general rule. It is that where in an action for the specific performance of a contract to sell and convey land the vendor fails or refuses to convey and the vendee, to the knowledge of the vendor, sets apart and keeps the purchase price subject to the order of the vendor upon his delivery of the deed and derives no benefit from it, the vendor must account for the rents and profits of the land he retains, but the vendee is not liable to account for the interest on the purchase price. 36 Cyc. 754 (3d); Bostwick v. Beach, 103 N. Y. 414, 424, 9 N. E. 41; Worrall v. Munn, 38 N. Y. 137, 142, 146; Hart v. Brand, 1 A. K. Marsh. (Ky.) 159, 10 Am. Dec. 715; Bass & Carter v. Gilliland's Heirs, 5 Ala. 761, 766; Fry on Specific Performance, § 1383; Hayes v. Elmsley, 23 Can. Sup. Ct. 623, 627; Kershaw v. Kershaw, 21 L. T. R. N. S. 651, 652; Regent's Canal Company v. Ware, 23 Beavan, 575; Howland v. Norris, 1 Cox, 59, 60, 62; Leggott v. Metropolitan Railway Company, 5 L. R. Chan. App. 716, 719.

The decree below was right, and it is affirmed.