No. 23,384.

CHESTER GROW, *Appellant,* v. D. A. DAVIS et al., *Appellees.*

SYLLABUS BY THE COURT.

1. CONTRACT—*Agreement to Execute an Oil and Gas Lease—No Mutuality of Obligation—Not Enforceable.* An instrument in form a contract, provided that the first party should execute an oil and gas lease and deposit it in a bank, for delivery to the second party when the second party should begin drilling a well in a specified locality. The second party agreed to begin drilling the well; but the instrument provided that if he did not begin drilling within a stated time the contract and lease should be of no effect. *Held,* the instrument when signed did not create an enforceable obligation, and the first party could withdraw at any time before the second party commenced to drill.

2. SAME—*Withdrawal from Contract.* The petition filed by the second party to enforce specific performance of the contract considered, and held to dis—

Grow v. Davis.

close that the first party did withdraw from the contract before the second party commenced to drill.

3. SAME—*Contract to Make a Contract—Incomplete—Not Enforceable.* The contract provided that the lease to be executed should be Producer's form 88. A material subject of Producer's form 88 was not covered by the contract, and the lease could not be written without further negotiation. *Held,* the contract was not specifically enforceable.

Appeal from Marion district court; ROSWELL L. KING, judge. Opinion filed January 7, 1922. Affirmed.

*R. L. Holmes, Charles G. Yankey, W. E. Holmes,* and *D. W. Eaton,* all of Wichita, for the appellant.

*W. H. Carpenter, W. R. Carpenter, John E. Wheeler,* all of Marion, and *C. L. Harris,* of El Dorado, for the appellees.

The opinion of the court was delivered by

BURCH, J.: The action was one to compel performance of a contract to execute an oil and gas lease. A demurrer to the petition was sustained, and the plaintiff appeals.

On July 14, 1919, the following instrument, which for convenience will be referred to as a contract, was signed by the defendants, the Davises, and by the plaintiff:

"THIS AGREEMENT, made and entered into this 14th day of July, 1919, by and between D. A. Davis and Hester B. Davis, his wife, of Marion county, Kansas, parties of the first part, and Chester Grow, of La Harpe, Kansas, party of the second part,

"WITNESSETH: That for and in consideration of the covenants and agreements to be done and performed by the said party of the second part hereinafter set forth to be done and performed, said parties of the first part hereby agree to execute their certain oil and gas mining lease, the Producer's 88, as lessors to said party of the second part, as lessee, covering the following described land in Marion county, state of Kansas, to wit: The northwest quarter of the southeast quarter of section twenty (20), township twenty-one (21), range five (5), containing forty (40) acres more or less, which said oil and gas mining lease, together with this agreement, shall be deposited in The Marion County State Bank of Florence, Kansas, to be delivered to said second party as is hereinafter provided; and said parties of the first part covenant to and with said party of the second part that they are the lawful owners of the land described in said oil and gas mining lease, and that they have good and valid right and authority to execute said lease.

"In consideration of the execution of said oil and gas mining lease and the covenants and agreements above set forth to be done and performed by the said parties of the first part, said party of the second part covenants and agrees to commence the actual drilling of a well for oil and gas on a tract of land, the nearest point or part of which said tract of land on which said well is located shall be within a distance of five miles from some boundary line of the land described in the above mentioned oil and gas lease, and when the

actual drilling of said oil and gas well shall be commenced by said party of
the second part, or his assigns, then said oil and gas mining lease shall be de-
livered to said party of the second part by said The Marion County State
Bank of Florence, Kansas; and upon the commencement of the actual drilling
of said oil and gas well by said party of the second part, or his assigns, the said
The Marion County State Bank of Florence, Kansas, is authorized and di-
rected to deliver said oil and gas mining lease to said party of the second part
without further notice from said first parties.

"Lease calls for one-eighth of oil, $250 for gas well, $50 for gas from oil
well, five year term, $1.00 per acre rental.

"It is further stipulated and agreed by and between the parties hereto that,
in the event said party of the second part or his assigns, do not commence the
actual drilling of an oil or gas well, as provided in this agreement, within a
period of ninety days from the date of the execution of the oil and gas lease
hereabove mentioned and described, then said oil and gas mining lease shall be
null and void, and shall be delivered back to said parties of the first part by
said The Marion County State Bank of Florence, Kansas, and this contract
shall be of no force or effect, but shall cease and terminate."

The Davises did not perform. The action was commenced on
March 11, 1920, and the petition contains the following allegations:

"That by the terms of said agreement this plaintiff was to commence, or
cause to be commenced, within ninety (90) days from the date of said oil and
gas lease to be executed under said contract, a well to be drilled for oil and gas
at some point within five (5) miles of some boundary line of the land herein
described and covered by said contract; that the plaintiff did drill and cause
to be drilled to completion an oil well, and the same is now a paying oil pro-
ducing well, at a point within five miles of the boundaries of the land herein
described, in accordance with his covenants and agreements, as provided in
said contract herein referred to as Exhibit 'A.'

"That plaintiff, after the execution of said contract, prior to the commence-
ment of said well, and after the commencement of said well, demanded of said
defendants that they execute the said oil and gas lease, as provided in said con-
tract, and place the same in said Marion County State Bank of Florence,
Kansas.

"That said defendants, even though the plaintiff complied with all of his
covenants and agreements, neglected and refused to execute and deliver the
said oil and gas lease, as required by said contract; that the plaintiff has often
requested and demanded of said defendants that they execute and deliver said
oil and gas lease.

"That this plaintiff has done and performed all of the things required of
him by the said contract, and he is now entitled to have from the said defend-
ants the oil and gas lease therein called for."

The contract stated the consideration for its execution—a promise
for a promise. The Davises agreed to execute the lease, and to de-
posit the contract and executed lease in the bank. The plaintiff

agreed to commence drilling a well in a certain locality. That, however, was not all. If the plaintiff did not see fit to begin drilling within ninety days after execution of the lease, the contract was to be of no effect, and the lease was to be of no effect. The plaintiff, by exercise of his own will, could retire from the contract without liability, and so was not bound. Since there was no mutuality of obligation, the Davises were not obliged to perform, and the instrument which has been designated a contract did not, when signed, evidence enforceable obligation.

The Davises could do nothing which would bind the plaintiff, but the contract could be made mutually obligatory by performance by the plaintiff. The petition, which represents the plaintiff's third attempt to state a cause of action, carefully avoids alleging when the plaintiff commenced drilling. Until the plaintiff commenced drilling, the Davises, who rested under no enforceable obligation because it was optional with the plaintiff to drill, could withdraw altogether, and the petition shows they did withdraw. The Davises disregarded the contract. They did not sign the lease, and they did not deposit the contract and lease in the bank. Before the plaintiff commenced to drill, that is, before he did the act which would conclude the Davises, he took note of the Davises' attitude, and demanded performance. The demand was refused, and after the Davises refused to perform, the plaintiff could not impart vitality to the contract by performing on his side. It will be observed the petition expressly alleges demand that the Davises execute the lease, made before the plaintiff commenced to drill. The plaintiff also alleges subsequent demand. Refusal is pleaded generally, and the plaintiff cannot deny that the first demand was refused. When the first demand was made, the Davises were privileged to refuse to perform, and so terminate the relations of the parties. All this is elementary in the law of contracts.

The contract is unenforceable for another reason. The contract was an agreement to make a contract. Such an agreement is not binding unless all the terms and conditions are agreed on and nothing is left to future negotiation. (*Railroad Co. v. Gorman*, 79 Kan. 643, 100 Pac. 647.) The form of lease was specified: It was to be Producer's form 88. The form contained blank spaces to be filled by agreement. The contract supplied the matter to be inserted in some of the spaces: "One-eighth of oil, $250 for gas well, $50 for gas from oil well, five year term, $1.00 per acre rental." The lease

granted the premises for the sole purpose of mining and operating for oil and gas. No time for beginning mining operations was fixed, and the lease contained the following:

"If no well be commenced on said land on or before the ———— day of ————, 19—, this lease shall terminate as to both parties, unless the lessee on or before that date shall pay or tender to the lessor, or to the lessor's credit in the ———— Bank at ———— or its successors which shall continue as the depository regardless of changes in the ownership of said land, the sum of ———— Dollars, which sum shall operate as a rental and cover the privilege of deferring the commencement of a well for ———— months from said date. In like manner and upon like payments or tenders the commencement of a well may be further deferred for like periods of the same number of months successively."

The contract indicated the amount of rental to be inserted in the blank for that purpose, but the date on which payment of rental should begin in order to save the lease from termination because no well was commenced was not fixed by the contract. The time limit within which a well should be commenced or rental begin was a subject of primary importance. Producer's form 88 made the subject material. The contract was silent about it, the lease could not be written without further negotiation respecting its terms, and so the contract was not binding.

The judgment of the district court is affirmed.