Van Deren v. Heineke & Co.

Nos. 25,425 and 27,007.

J. B. Van Deren, *Appellant,* v. Heineke & Company, *Appellee.*

SYLLABUS BY THE COURT.

1. Appeal and Error—*Right of Review—Ruling Quashing Service Followed by General Appearance.* Where a plaintiff sought to bring into court a foreign corporation not authorized to do business in this state by two methods of service of summons, one upon an alleged agent of the corporation and the other upon the secretary of state as authorized under certain conditions, and the trial court quashed the service on the alleged agent but sustained the service upon the secretary of state, and the latter ruling was not appealed from, the question whether the service on the alleged agent was properly quashed presents nothing material for appellate review.

2. Same—*Right of Review—Final Order—Motion to Strike from Pleading.* When a motion to strike from a pleading certain allegations involving the merits of the action is sustained, the party aggrieved thereby must appeal therefrom within six months, otherwise the ruling is not subject to review.

3. Pleading—*Order to Make More Definite and Certain—Discretion of Trial Court.* An order of the trial court requiring plaintiff to make his petition more definite and certain in some particulars is one within the sound discretion of the trial court, from which ordinarily no appeal will lie, and in the instant case no prejudicial error appears.

4. Same—*Demurrer—When Proper.* Where by reason of the lengthy recitals and complicated details of a petition the propriety of defendant's demurrer thereto is not readily apparent, the opposing party may await the submission of plaintiff's evidence, and if plaintiff's failure to state or maintain a cause of action is then apparent the action may be summarily terminated by a ruling on a demurrer to the evidence.

5. Contracts—*Mutuality of Obligation.* A written instrument or series of written instruments and pertinent written correspondence of the interested parties, whereby defendant obligated itself to manufacture and ship to plaintiff such threshing-machine feeders, mounted extensions and repairs as the latter "may sell . . . or buy outright," but which does not bind plaintiff to sell or buy outright a single feeder, extension or repair, and where there was no consideration passing from plaintiff to defendant nor any other *quid pro quo* in return for defendant's obligation, such instruments and correspondence constitute no more than an imperfect obligation, which is unenforceable for lack of mutuality.

6. Evidence—*Parol Evidence to Vary Written Contract—Admissibility.* Neither by allegations in pleadings nor by parol evidence of prior or contemporary oral agreements can vitiating defects of written instruments be supplied when it was not contended that the matters sought to be thus supplied were omitted from the written instruments by fraud or mutual mistake.

Appeal and Error, 3 C. J. p. 1043 n. 28; 4 C. J. p. 801 n. 56. Appearances, 4 C. J. p. 1359 n. 88. Contracts, 13 C. J. p. 339 n. 86; 6 R. C. L. 686. Evidence, 22 C. J. p. 1098 n. 96; 17 L. R. A. 272; 10 R. C. L. 1036. Trial, 38 Cyc. p. 1544 n. 75.

Appeal from Sedgwick district court, division No. 1; J. Everett Alexander, judge. Opinion filed January 8, 1927. Affirmed.

*Jean Madalene, Paul Brown, Silas Brown,* all of Wichita, and *Sam P. Ridings,* of Medford, Okla., for the appellant.

*W. D. Jochems* and *J. Wirth Sargent,* both of Wichita, for the appellee.

The opinion of the court was delivered by

Dawson, J.: This was an action for damages for breach of a contract under which plaintiff held the agency for the sale of threshing-machine feeders manufactured by defendant.

Defendant is a foreign corporation not authorized to transact its corporate business in Kansas, and plaintiff resorted to two methods of service to bring defendant into court in Sedgwick county. One of these was to cause summons to defendant to be served on one J. Wirth Sargent, a member of a firm of lawyers in Wichita employed to look after defendant's legal affairs. Mr. Sargent had busied himself about the matter of getting defendant's machines, wares and other personalty shipped to St. Louis, and may have performed other services either directly for defendant or as a junior member of the law firm employed by defendant.

Another method of service was attempted through summons to defendant served upon the secretary of state in the manner authorized by the statute for service on foreign corporations which have received lawful authority to exercise their corporate activities in this state. (R. S. 17-504.)

The first method of service was sharply challenged in the trial court, and affidavits and other evidence were presented bearing upon the questioned agency of J. Wirth Sargent to accept or submit to service of summons on behalf of defendant. The trial court quashed the service on Sargent; and plaintiff's appeal from that ruling is case No. 25,425.

Defendant's motion to quash the service of summons through the secretary of state was overruled, and apparently defendant acquiesced in that ruling. It made a general appearance by filing a motion to strike out certain matter from plaintiff's petition. (*King v. Ingels,* 121 Kan. 790, 250 Pac. 306.) This motion was sustained. Defendant then filed a demurrer to the petition, which was overruled; and defendant answered with a general denial.

The cause was heard at length, and at the conclusion of plaintiff's evidence defendant lodged a lengthy demurrer thereto, setting up

various grounds, one being that the contract was void for want of mutuality. The trial court ruled thus:

"It is my judgment, . . . that this contract is void for the lack of mutuality. It is further my opinion from a review of the evidence as I recollect it, that the damages shown or attempted to be shown are too remote, uncertain and speculative to form the basis of an action. The demurrer will be sustained as to each and every cause of action."

From this judgment plaintiff brings his second appeal, which is case No. 27,007.

Touching the first of these appeals, although the matter covers 101 pages of plaintiff's abstract and 18 pages of his brief, it is perfectly plain that the question whether J. Wirth Sargent was an agent of defendant of such capacity that summons could be effectively served upon him has become purely academic and inconsequential, since the summons served upon the secretary of state was held valid and effective (correctly or otherwise), and issues were joined pursuant to that service. If what has just been said were not altogether sufficient to dispose of the appeal in case No. 25,425, it would have to be disposed of quite as summarily under the rule that the trial court's determination of the question of fact—Sargent's alleged agency—based as it was upon conflicting evidence, is conclusive. (*Betterment Co. v. Reeves*, 73 Kan. 107, 114, 84 Pac. 560.)

Passing to case No. 27,007, the first error urged by plaintiff relates to the trial court's ruling on defendant's motion to strike out certain recitals from plaintiff's petition. Such a motion is equivalent to a demurrer. (*Norman v. Railway Co.*, 101 Kan. 678, 680, 168 Pac. 830.) An appeal from a ruling on such a motion must be taken within six months, otherwise this court has no jurisdiction to review it. (Civ. Code, §§ 565, 572; R. S. 60-3302, 60-3309.) Here the ruling complained of was made some time early in 1924, date not shown, but it must have been prior to April 24, 1924, since plaintiff's amended petition drawn in conformity therewith was filed on that date. This appeal was taken on February 25, 1926. Hence the error assigned on this ruling cannot be reviewed. (*Jerald v. Houston*, 120 Kan. 3, 242 Pac. 472.)

Appellant's next specification of error relates to the trial court's requirement that plaintiff should make his petition more definite and certain in some particulars. Such a ruling was well within the sound discretion of the trial court. It made for expedition in getting the case ready for trial and for economy of time in the trial itself, by

clarifying the issues. Certainly no prejudicial error arose from such ruling. (*Cribb v. Hudson*, 99 Kan. 65, 160 Pac. 1019. And see *Fox v. Ryan*, 121 Kan. 172, 246 Pac. 520.)

Appellant's third specification of error is concerned with the vital question in this lawsuit—the propriety of the trial court's ruling on the demurrer. The petition with its attached exhibits in this case was very long, and complicated by the inclusion of many more or less pertinent details. It occupies forty-five printed pages of the abstract. It has been held that where the propriety of a demurrer to a petition is not clear, the opposing party may await the conclusion of plaintiff's evidence, when it may thereby become quite manifest that plaintiff has no cause of action and the case may then be brought to a close by a ruling of the court on demurrer. (*Mercantile Co. v. Rooney*, 114 Kan. 840, 220 Pac. 1048, and citations.) Although a demurrer to a petition has been improperly overruled, no prejudicial error is committed if in the course of the trial, when the court pursuant to the introduction of testimony gets a better understanding of the nature of the action, it takes the case from the jury and sustains a demurrer to the cause or causes of action attempted to be stated in the petition. At all stages of a lawsuit prior to final judgment thereon, and before the expiration of the term in which such final judgment is rendered, and where no intermediate appeal is taken, the trial court has plenary power to correct or change its rulings as justice and a better understanding of the case and its issues may require. (*Burnham v. Burnham*, 120 Kan. 90, 93, 242 Pac. 124, and citations.)

Passing for the present the point involved in the trial court's ruling that the damages attempted to be established were too remote, uncertain and speculative to form the basis of an action, let us consider the correctness of the ruling that the contract was void for want of mutuality. The first contract, exhibit A, dated January 15, 1915, among less significant recitals stipulated:

"Party of the first part [defendant] agrees to manufacture and ship to the party of the second part [plaintiff] such Heineke New Improved Feeders, fourteen-foot mounted extensions, and repairs as the party of the second part may sell in the territory below described, or buy outright for cash in advance, at the following prices and terms:  . . .

"Rotary-style feeders, each $70 regardless of size.

"Crank-style feeders, each $75 regardless of size.

"Mounted extensions, 14 foot, $27.

"Repairs, forty per cent (40 per cent) off regular list price.

"Terms: F. O. B. factory at Springfield, Ill., due net cash October 15, 1915. Freight to be paid by first party on consigned goods, but to be collected and refunded to first party as the machinery is sold.

. . . . . . . . . . . . .

"The party of the second part agrees to remit promptly to the party of the first part the above-named purchase prices on all feeders and extensions sold by him for cash on delivery. On sales made partly for cash and partly on time the party of the second part agrees to remit to the party of the first part such a proportion of the above-named purchase price as the cash payment received bears to the entire selling price.

. . . . . . . . . . . . .

"Party of the second part further agrees to take all note settlements in the name of Heineke & Company on their regular printed form of note and mortgage blanks, to be furnished by the first party, and to forward same as soon as executed in the proper manner to the party of the first part, to be held as collateral to secure the account of the second party until his accounts have been settled in full, at which time the party of the first part shall indorse the notes without recourse and deliver the same to the party of the second part.

. . . . . . . . . . . . .

"All the state of Kansas, except the northern tier of counties, and the territory in Missouri tributary to Kansas City. . . .

. . . . . . . . . . . . .

"This contract expires November 1, 1915, but if all provisions have been fully complied with the party of the second part shall have the right to renew same from year to year for three years with the understanding that in case the prices of belting and cotton duck should advance then the prices on feeders are to be increased a sufficient amount to cover such advances. However, in case the party of the second part should sell 150 or more feeders each season, and pay for same according to contract, then the prices on feeders are to remain the same even though the prices of materials should advance.

"HEINEKE & CO.,

"Accepted: J. B. VAN DEREN.                    M. HEINEKE."

The next contract, dated November 8, 1915, was substantially like exhibit A, but included Oklahoma in the area of plaintiff's operations. It, too, bound defendant to manufacture and ship to plaintiff such feeders "as the party of the second part may sell." The third contract between the parties, dated September 25, 1916, was to the same general effect, but also enlarged the plaintiff's field of activity to include Texas and Colorado, and contained the following clause:

"It is mutually agreed and understood that in case the party of the second part shall sell forty (40) or more feeders during the season of 1917 in the states of Kansas, Oklahoma, Texas, and that part of Missouri tributary to Kansas City, and ten (10) feeders in the state of Colorado, and settles for same according to contract, this contract is to be renewed for a period of four years. In case the prices of materials which enter into the construction of the feeders

should decrease and be as low as the prices which prevailed during the season of 1915, then the prices on feeders are to be reduced to $65 each for the rotary style and $70 each for the 'crank style."

These contracts were attached to plaintiff's petition as exhibits, as were also attached copies of certain letters of later dates which passed between the parties, and which may fairly be construed as having the same effect as the contracts of 1915, 1916, and 1917, set out above, but which for present convenience may be construed as successive renewals of these contracts with slight modifications. One such letter, dated January 13, 1921, after stating prices and terms for the year beginning November 1, 1920, contained the following:

"It is agreed and understood that the above-named prices are for the season of 1921 only, and that this agreement is a supplement to contract entered into September 25, 1916, which does not change any of the provisions of said contract except for the change in prices above stipulated for this season only, and the time said original contract is to run is extended one additional year, that is, it is to run full period of four years from November 1, 1921.

"HEINEKE & COMPANY.
"M. HEINEKE."

Appended to this letter was the following:

"Accepted this 13th day of January, 1921. By J. B. VAN DEREN."

On May 9, 1922, defendant wrote to plaintiff as follows:

"To J. B. Van Deren:

"You are hereby notified that owing to the fact that the undersigned has no valid contract with you . . . . the undersigned does hereby elect to rescind, cancel and declare at an end the purported contract dated the 25th day of September, 1916, and any and all amendments thereto and extensions thereof. You are hereby notified not to take any more orders for any of our products from and after the date of the service of this notice, and that any orders now in the hands of the undersigned company for actual sales will be filled by the undersigned."

Under these successive contracts, so-called, what obligation did plaintiff undertake in consideration of defendant's obligation to manufacture and ship to him such feeders as plaintiff might sell? Did plaintiff bind himself to sell any feeders? Not under the written terms of any of these contracts. If he sold any feeders, he was to remit promptly on such as were sold for cash; and he was to remit promptly a proper proportion of whatever moneys were received in part payment, and he was to take notes in settlement in the name of defendant for feeders sold on time and to forward the same to defendant to be held as collateral to secure his own accounts. Plain-

Van Deren v. Heineke & Co.

tiff's obligations if and when he might sell a feeder were fully defined, but he did not bind himself to sell anything. If he did not sell a single feeder, defendant would have no cause of action against him for damages for breach of contract. How then can defendant be held in damages for its repudiation of this imperfect obligation? Defendant did not fail to supply such feeders as plaintiff did sell. It merely put a period to a business relationship between itself and plaintiff under which the latter had no obligation to perform.

Plaintiff brings forward some plausible arguments to show that there was a mutual obligation, that plaintiff was bound "by an oral agreement at the time of entering into these contracts to advance the sale of the goods of the defendant." But no mere allegations in pleadings nor parol evidence of precedent or contemporary oral agreements can be considered to supply vitiating defects in written contracts. It is not alleged that some material provision of the contract was inadvertently omitted by the scrivener, or by mutual mistake of the parties; nor does plaintiff ask that the contract be reformed. The instrument must therefore stand or fall as written. And it is essentially an imperfect contract. For the ostensible obligation which rests on defendant there is no complementary obligation resting on plaintiff nor any consideration passing from him to defendant. It is therefore fatally wanting in mutuality. (13 C. J. 331, 332, 339, 340; 6 R. C. L. 603, 648, 686-689.) In *Fitzstephens v. Whan,* 113 Kan. 650, 216 Pac. 269, this court said:

"To make a valid contract . . . there must be mutual obligations. What obligation did plaintiff undertake? What consideration passed from him to defendant? The evidence discloses none. Defendant could not enforce any sort of liability against plaintiff. He was under no duty to do anything. Any relationship of plaintiff to the so-called contract could neither be the subject of specific performance at the instance of defendant nor could the latter recover anything for the breach of it. Essential elements of a contract are consideration and mutuality. These were wanting. . . . The contract was therefore abortive, a *nudum pactum.*" (p. 651.)

Among the decisions in our own reports which hold that no recovery can be had for the repudiation or breach of an imperfect obligation such as the so-called contract relied upon by plaintiff, are: *Woolsey v. Ryan,* 59 Kan. 601, 54 Pac. 664; *Railway Co. v. Bagley,* 60 Kan. 424, 56 Pac. 759; *Grow v. Davis,* 110 Kan. 214, 203 Pac. 683.

To the same effect are: *Bessire & Co. v. Corn Products Mfg. Co.,* syl. ¶ 3 (Ind. App.), 94 N. E. 353; *Higbie v. Rust,* 211 Ill. 333;

*Joliet Bottling Co. v. Brewing Co.,* 254 Ill. 215; *Wickham & B. C. Co. v. Farmers Lbr. Co.,* 189 Ia. 1183; *Steinwender-Stoffregen Coffee Co. v. Guenther Grocery Co.* (Ky. App.), 80 S. W. 1170; *International Shoe Co. v. Herndon* (S. C.), 133 S. E. 202, 45 A. L. R. 1192; *Hoffman v. Maffioli,* 104 Wis. 630.

This class of contracts has been quite prolific of litigation in the federal courts, which with undeviating consistency have held them void and unenforceable for want of mutuality. (*Crane v. C. Crane & Co.,* 105 Fed. 869; *Cold Blast Transp. Co. v. Kansas City Bolt & Nut Co.,* 114 Fed. 77, 57 L. R. A. 696; *A. Santaella & Co. v. Otto F. Lange Co.,* 155 Fed. 719; *Velie Motor Car Co. v. Kopmeier Motor Car Co.,* 194 Fed. 324; *Oakland Motor Car Co. v. Indiana Automobile Co.,* 201 Fed. 499.)

It therefore becomes unnecessary to consider other features of this lawsuit urged on our attention. The record contains no prejudicial error and the judgment is affirmed.