## LADD v. FOSTER INV. CO.

District Court, D. Kansas, Third Division.
May 31, 1928.

No. 725.

1. **Courts ⬄359—Agreement to execute oil and gas lease on real estate is governed by state laws.**

Agreement to execute oil and gas lease on certain described real estate is covered by laws of state, since it is agreement regarding title to real property within state.

2. **Frauds, statute of ⬄56(6)—Contracts for oil and gas leases come within statute of frauds (Rev. St. Kan. 1923, 33–106).**

Contracts for execution of oil and gas leases come within terms of statute of frauds (Rev. St. Kan. 1923, 33–106).

3. **Frauds, statute of ⬄129(3)—Indefinite agreement for oil lease, execution of leases, and their deposit in escrow, and examination of leases by defendant without objection, except to title, held to satisfy statute (Rev. St. Kan. 1923, 33–106).**

Agreement for execution of oil lease, which was too indefinite to be enforced, together with execution of leases and their deposit in escrow, examination of leases by defendant, and defendant's letter objecting to title, but not to leases, held to constitute binding contract to buy leases sufficient to satisfy statute of frauds (Rev. St. Kan. 1923, 33–106).

4. **Frauds, statute of ⬄118(1)—Memorandum required under statute of frauds need not be in single paper (Rev. St. 1923, 33–106).**

Memorandum required under Kansas statute of frauds (Rev. St. 1923, 33–106) need not be in single paper, but may be helped out by other writings, which are manifestly tied together by correspondence.

5. **Mines and minerals ⬄57—Where no time is stipulated, reasonable time is implied for execution of agreement for oil lease.**

Where no time is provided for execution of agreement to execute oil and gas lease, reasonable time is implied.

6. **Mines and minerals ⬄57—What is reasonable time for execution of agreement for oil lease is fact question, dependent on circumstances.**

Question of what is reasonable time for execution of agreement for oil and gas lease is question of fact, but depends on circumstances.

7. **Mines and minerals ⬄57—Eight weeks held not reasonable time for execution of agreement for oil leases.**

Eight weeks *held*, as matter of law, unreasonable time for execution of agreement for oil and gas leases, especially where title could not be perfected without court proceedings, in which order of probate court was required.

At Law. Action by L. A. Ladd against the Foster Investment Company. Demurrer to second amended petition sustained.

Joseph A. Fuller, S. F. Wicker, and Gordon A. Badger, all of Eureka, Kan., for plaintiff.

C. H. Rosenstein, of Tulsa, Okl., for defendant.

McDERMOTT, District Judge. A general demurrer has been lodged to the second amended petition in this action, which sets out substantially the following situation:

On the 4th day of November, 1925, a written agreement was made by which the plaintiff agreed to execute an oil and gas lease to the defendant on certain described real estate, "under the terms of regular producers' 88 form of lease for a period of five years." The defendant agreed to pay the plaintiff the sum of $10,000 upon delivery to an escrow agent of the lease, together with an abstract of title "showing good and merchantable title in L. A. Ladd." On the 13th of November, two leases were executed covering this property upon a Kansas producers' 88 form. That form has certain blanks to be filled in, in addition to the parties, the description of the property, and the length of term of the lease, which blanks are used to set out the rent or royalty that shall be paid for both gas and oil, prescribes the date at which the well shall be commenced, and, in default of a well within the time prescribed, specifies the rental to be paid. None of these last three items, it will be observed, is designated in the contract. These leases were sent, together with an abstract of title, to the escrow agent and the

papers were examined by the defendant. The defendant made no objection to the form or the terms of the leases as executed.

Counsel for the defendant, however, at Tulsa, Okl., the home of the defendant, in a written opinion rejected the title, on the ground that the record showed that an administratrix had indirectly purchased from herself the real estate covered by the lease. On the same day the defendant advised the plaintiff of the rejection of the title and sent to the plaintiff a copy of the opinion of counsel. The lease and abstracts were returned to the escrow agent on that day, with instructions to return them to the plaintiff. In the letter to plaintiff the defendant stated:

"We are also writing Messrs. Leydig, Geddes & Grant, attorneys at El Dorado, Kan., who have represented us in several matters, requesting that they immediately get in touch with you and try to work out some plan whereby you may be able to deliver a merchantable title to us. We are anxious to complete this transaction as soon as possible and have so advised these attorneys. Will you please give them all assistance possible?"

Upon receipt of that letter the plaintiff took the abstract and the lease, which had been returned to him, to the Kansas lawyers mentioned, for the purpose of seeing if and how the title could be straightened up. The Kansas lawyers for the defendant advised them it would be necessary to take the necessary steps in court to procure a deed from the guardian of certain minor heirs, and such Kansas counsel directed the plaintiff to take the necessary steps to secure such deed. The plaintiff proceeded to secure this deed, but on the 24th day of November, 1925, and before such deed could be procured, the defendant advised the plaintiff that, "in view of the fact that you are not able to furnish good merchantable title to this lease, and that it will take considerable time to attempt to fix up this title, we have decided not to take the lease, but to cancel and rescind the contract that we have heretofore entered into."

It is alleged that the plaintiff did proceed to procure a guardian's lease, and on the 14th of January, 1926, which the plaintiff alleges was within a reasonable time, tendered to the defendant a new lease, signed by the guardian, together with an abstract of title showing good title to the real estate, but that the defendant refused to accept the same. It is further alleged that on the 4th day of November, 1925, the day the contract was made, the oil and gas lease had a reasonable market value of $10,000, but that on the 24th of November, 1925, 20 days later, the oil and gas lease had no market value, and has never since had any market value. The action is at law for damages in the sum of $10,000.

In support of the demurrer it is alleged that the original contract was void under the statute of frauds; that after the rejection of the title, the negotiations never ripened into a contract, and if they did the contract was unenforceable because of the statute of frauds; that the plaintiff had not agreed to furnish a good title and therefore the plaintiff was not bound; and that performance was not tendered in proper time. Section 33–106, R. S. Kansas 1923, provides that no action shall be brought whereby to charge a party upon "any contract for the sale of lands, tenements, or hereditaments, or any interest in or concerning them; * * * unless the agreement upon which such action shall be brought, or some memorandum or note thereof, shall be in writing and signed by the party to be charged therewith, or some other person thereunto by him or her lawfully authorized in writing."

[1, 2] This being an agreement regarding title to real property in the state of Kansas, it is covered by the laws of that state. Beckwith v. Clark, 188 F. 171 (8 C. C. A.). Contracts for oil and gas leases come within the terms of the statute above quoted. Robinson v. Smalley, 102 Kan. 842, 171 P. 1155; White v. Green, 103 Kan. 405, 173 P. 974.

[3] If the defendant had refused to proceed immediately after the November 4th agreement was executed, no action could have been maintained on this agreement for the reason that the contract was too indefinite to be enforced. At least three of the vital terms of the contract had not been agreed upon on November 4th. There was no agreement as to the amount of the royalty to be paid, as to the time in which a well should be commenced, nor as to the rental to be paid in case the well was not commenced. The plaintiff's case might be helped by the well-known custom of paying a royalty of one-eighth, but there is no such fixed custom as to the time the well shall be commenced or the rental per acre in default of a well, these provisions varying from field to field and in accordance with the proximity to production. Grow v. Davis, 110 Kan. 214, 203 P. 683.

But the suit is not brought upon that memorandum alone. All the indefiniteness

of the memorandum of November 4th was made definite when the leases were sent to the escrow agent, with every blank filled out. The defendant examined these leases, together with the accompanying abstract, and wrote the plaintiff calling attention to a defect in the abstract, but not objecting to any of the terms of the leases. When the defendant examined the leases that were actually executed in accordance with the contract, and failed to take any exception to any of the terms, not only was the statute of frauds satisfied, but all objections to the contract because of its indefiniteness were cured.

[4] The memorandum required under the Kansas statute of frauds need not be in a single paper, but may be helped out by other writings which are manifestly tied together by the correspondence. Beckwith v. Clark, 188 F. 171 (8 C. C. A.); Arnett v. Wescott, 107 Kan. 693, 193 P. 377. In the latter case it is stated that the statute is satisfied by putting in escrow a deed which recites the terms of the sale, even though it is undelivered. This is also the rule in the federal courts. In Ford Motor Co. v. Hotel Woodward Co., 271 F. 625 (C. C. A. N. Y.), it was held that a letter referring to a draft of a lease, although the lease was never delivered, was sufficient to satisfy the statute of frauds.

I conclude, therefore, that the memorandum of November 4th, the execution of the leases, the deposit of the same in escrow, the examination of the leases by the defendant, and the letter of the defendant taking exception to the title, but no exception to the leases, taken together, constitute a contract to buy these leases for the sum of $10,000. In the defendant's brief, it is stated that there is no obligation upon the plaintiff. This is incorrect. The original memorandum obligated the plaintiff to lease the described real estate for oil and gas.

[5] No time is provided for the execution of the agreement. A reasonable time is therefore implied. Upon the receipt of the letter from the defendant, on November 18th, 1925, the plaintiff had a reasonable time in which to perfect this title, and if the same had been perfected and tender made within a reasonable time after that date, the defendant would have been obligated to take the lease. It is true that the plaintiff was not obligated to undertake the probate proceedings, nor could the plaintiff give any assurance that the probate court would authorize the lease. But if he did not procure good title, the plaintiff was then liable for breach of his contract to lease this land; for, of course, A. can make a binding contract to sell land that belongs to B. Under the Kansas statute a guardian may not make a deed or a lease without the approval of the probate court, and manifestly on the 24th day of November, it was impossible to anticipate whether the probate court would authorize this lease or not; if the lease had risen greatly in value, the court probably would not have.

Between November 18th and November 24th, the defendant must have been advised that the only way in which his title could be cured was by a guardian's lease. It is fair to assume that the defendant was advised that there could be no assurance that a guardian's lease would ever be made, because it rested in the sound discretion of the probate court; but even if the probate court should authorize the making of the lease, and confirm it when made, it would be a matter of weeks before it could be accomplished. The petition alleges that the proceedings were not completed until the 12th day of January and that a tender was not made until the 14th of January. This is a matter of approximately eight weeks.

[6, 7] While the question of what is a reasonable time is a question of fact, it is a question of fact which depends upon circumstances. What would be a reasonable time to perfect the title for a piece of farm land would be an unreasonable time to perfect the title for an oil and gas lease. Moreover, while a purchaser of a farm might be reasonably expected to wait for several weeks before it was determined whether title could be made, a purchaser of an oil and gas lease stands in very different stead. This matter has received the attention of our Circuit Court of Appeals. In Texas Co. v. Herring, 19 F.(2d) 56, this court said:

"No time for performance was fixed in the contract itself, and we do not think that the time provisions in the contract which Herring had with Sanders and Wise were applicable; hence a reasonable time would be implied by law. What was a reasonable time depends upon all the facts and circumstances of the case. Briefly stated they are as follows: The land in question was in Beckham county, Oklahoma, and in the vicinity of lands where oil wells were being drilled; there were already two producing wells in the county; the acreage was increasing in value; the contract between appellee and Sanders and Wise looked to an early perfecting of title, and appellee, under that contract, was in a position to pro-

tect himself against unreasonable delay by cancellation of the contract; the subject-matter of the contract in controversy, an oil and gas lease, was of such character that a short time would be considered a reasonable time in which to perfect title and tender performance; the custom of the trade in selling oil and gas leases of lands within several miles of a discovery well, in what had theretofore been unproven territory, was that the lease should be tendered in ten days or two weeks; both parties knew that the market value of such leases in that locality was in a rapidly fluctuating state; the vendee was not given possession of the land; $3,000 was placed in escrow by the vendee, upon which loss of interest was daily accruing; the delay was being caused by no fault or neglect on the part of the vendee. On the other hand, appellant knew that Herring was not in a position to perform at once. The contract which Herring had with Sanders and Wise showed that. * * * Great decrease in value of the land during the delay is an important element to be considered in determining whether specific performance shall be granted to the party responsible for the delay."

The oil and gas business is a fast game. The bringing in of a well makes fortunes overnight. Oil and gas leases that were worthless to-day are converted into fortunes overnight. Oil and gas leases that are of great value to-day become worthless by to-morrow, if a well that holds great promise comes in dry, or if a well suddenly plays out. The petition in this case alleges that between the 4th of November and the 24th of November, a period of 20 days, the market for this lease declined from $10,000 to nothing. This is not an unusual circumstance in the oil business.

If the time within which a tender is made falls within the zone of reason, then the question is one to be determined by a jury, after hearing the evidence. However, if the time falls without the zone of reason, it would be the duty of the court to set a verdict aside which held that the time was reasonable, when no reasonable man could so conclude.

I am of the opinion that, under the allegations of this petition, a verdict of a jury holding the defendant liable should not be allowed to stand. Some time around the 20th day of November, the defendant was advised that the title could not be perfected without proceedings in court, which actually took a period of about eight weeks, and must have been advised that the question of whether the title could ever be perfected depended upon the approval of the probate court of the terms of the lease submitted to him for approval. The oil and gas game is too fast to hold a defendant in such uncertainty for such a length of time. If between the date of filing of the application for the lease by the guardian and the date of the order the lease should suddenly treble in value, the probate court would not be justified in ordering the lease made. To hold the defendant would be to enable the plaintiff to gamble at the defendant's expense.

The demurrer will be sustained.